## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| JOSEPH GRASSO, | ) | Case No. 12-11063 (MDC) |
| | ) | |
| Debtor. | ) | |

*HEARING INFORMATION*
Date:  August 21, 2012
Time:  11:00 a.m. EDT
Place: Courtroom 5
           Robert N.C. Nix Sr. Courthouse
           900 Market Street
           Philadelphia, PA 19107

**OBJECTION TO ALLOWANCE OF CLAIM OF MARSHALL J. KATZ**

Comes now Madison Capital Company, LLC ("Madison"), by and through its counsel, and hereby objects to the allowance of the claim of Marshall J. Katz, Proof of Claim No. 26, filed in the amount of $23,712,718.52. In support of its Objection, Madison would show the Court as follows:

### I. PRELIMINARY STATEMENT

Marshall J. Katz ("Mr. Katz") filed a Proof of Claim (copy attached as an exhibit hereto) in this case in the amount of **$23,712,718.52.** (*See* Claim No. 26.) Mr. Katz's claim is based on a state court action filed by Mr. Katz against Mr. Grasso, Saxby's Coffee Worldwide, LLC ("Saxby's Worldwide") and others (the "State Court Action") entitled *Marshall J. Katz v. Joseph Grasso, et al.*, No. 07-CH-24116, in the Circuit Court of Cook County, Illinois County Department, Chancery Division (the "State Court"). Prior to the filing of this case, the State Court entered an order of default as to liability against Mr. Grasso without a hearing when Mr. Grasso failed to "appear personally or through counsel" within twenty-one (21) days of having

been afforded an opportunity to do so following his counsel's withdrawal. ***The State Court has not addressed the merits of Mr. Katz's claim or determined the amount of damages to be awarded against Mr. Grasso. The State Court has not entered any judgment against Mr. Grasso.***

While the State Court has not entered judgment against Mr. Grasso, the State Court conducted "prove-up hearings" regarding the damages to be awarded against various other defendants against which default orders were also entered. The State Court entered judgment against these other defendants in an amount just shy of $24,000,000. Thus, Mr. Katz has filed a claim in this case for a similar amount.

The roughly $24,000,000 judgment against the other defendants includes roughly $6,000,000 in compensatory damages based almost entirely on Mr. Katz's self-serving and wholly unsupported testimony that Saxby's Coffee, Inc. ("Saxby's Coffee"), in which Mr. Katz claimed a 10.8% ownership interest, had a value of $50,000,000 when Saxby's Coffee sold its assets to Saxby's Worldwide for $600,000. Mr. Katz is not an appraiser or an expert in valuing companies and his testimony was based entirely on projections rather than Saxby's Coffee's actual operating results. In Saxby's Worldwide's bankruptcy case, this Court found Mr. Katz's valuation of Saxby's Coffee to be fatally "**flawed**" and "**of no value at all**." Indeed, after two (2) full days of hearing, this Court disallowed Mr. Katz's claim against Saxby's Worldwide in its entirety for voting purposes concluding that Mr. Katz's 10.8% interest in Saxby's Coffee had no value and Mr. Katz had no claim. Mr. Katz then withdrew his Proof of Claim before this Court could enter a final order disallowing Mr. Katz's claim.

The remainder of the roughly $24,000,000 judgment against the other defendants is for punitive damages. The State Court based its award of roughly **$18,000,000 in punitive**

**damages** entirely on the conclusory allegations contained in Mr. Katz's complaint that were deemed admitted as the result of the orders of default.

Since the State Court has not entered judgment against Mr. Grasso, the order of default entered against Mr. Grasso has no *res judicata* or collateral estoppel effect. Consequently, this Court must consider Mr. Katz's claim on the merits. On the merits, Mr. Katz's claim should be disallowed in its entirety for the same reasons that this Court disallowed Mr. Katz's claim against Saxby's Worldwide for voting purposes. Even if this Court were to allow some or all of Mr. Katz's claim for roughly $6,000,000 in compensatory damages (which it should not), this Court should certainly disallow Mr. Katz's claim for roughly $18,000,000 in punitive damages. The allowance of punitive damages would not punish Mr. Grasso; instead, the allowance of punitive damages would punish Madison and Mr. Grasso's other creditors.

## II. BACKGROUND

On June 2, 2009, Mr. Katz filed his First Amended Complaint (the "State Court Complaint") in the State Court Action against Mr. Grasso, Coffee Shops International, LLC ("CSI"), Walnut Street Capital, LLC ("WSC"), Saxby's Coffee, Saxby's Worldwide, Kevin Meakim, Robert D. Carroll, and Nicholas Bayer (collectively, the "State Court Defendants"). (*See* Grasso Docket No. 93, Ex. A at p. 10.) The State Court Complaint alleged that (i) Saxby's Coffee's sale of its assets to Saxby's Worldwide for $600,000 constituted a fraudulent transfer, breach of fiduciary duty and tortious interference with certain agreements between Mr. Katz and Saxby's Coffee, (ii) that Saxby's Worldwide was liable as a successor to Saxby's Coffee, (iii) that Mr. Grasso was an owner of Saxby's Worldwide, and (iv) that Mr. Grasso and the other State Court Defendants are jointly and severally liable for the damages that Mr. Katz allegedly incurred. (*See* State Court Complaint, Ex. A hereto)

On August 5, 2009, Saxby's Worldwide filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court. *In re Saxby's Worldwide Coffee, LLC*, Case No. 09-15898 (Bankr. E.D. Pa. 2009).  On November 2, 2009, Saxby's Worldwide filed an adversary proceeding in this Court against Mr. Katz and others asking this Court to extend the automatic stay to Mr. Grasso, Mr. Meakim and Mr. Bayer and to enjoin Mr. Katz from proceeding against them in the State Court Action. *Saxby's Coffee Worldwide, LLC v. John Larson, et.al.*, Adv. Pro. 09-00340 (Bankr. E.D. Pa. 2009). On December 4, 2009, this Court preliminarily enjoined Mr. Katz from prosecuting the State Court Action against Mr. Grasso, Mr. Meakim and Mr. Bayer. The preliminary injunction expired when Saxby's Worldwide failed in its initial attempts to confirm a Chapter 11 plan. (*See Saxby's Worldwide*, Docket No. 96.)

After Saxby's Worldwide filed its adversary proceeding but before this Court entered the preliminary injunction, the State Court entered the orders of default against Mr. Grasso, Mr. Meakim and Mr. Carroll on Counts III, IV, VI and VII of the State Court Complaint.  (*See* Grasso Docket No. 93, Ex. A at pp. 2 and 11.)  The State Court's Memorandum Opinion expressly states that orders of default were entered against Mr. Grasso, Mr. Meakim and Mr. Carroll due to their "failure to appear personally or through counsel" within the time allowed by the State Court. (*See* State Court Memorandum Opinion, Grasso Docket No. 93, Ex. A, at pp. 2 and 10.)  The State Court did not find or imply that the order of default against Mr. Grasso was entered due to Mr. Grasso's misconduct or failure to obey orders. (*Id*.)

On December 4, 2009, Mr. Katz filed a Proof of Claim in *Saxby's Worldwide* in the amount of **$14,378,291.36**, **roughly $10,000,000 less than the amount now claimed**. (*See Saxby's Worldwide*, Claim No. 27.)  Mr. Katz attached a copy of the State Court Complaint to the Proof of Claim.  On January 26, 2010, Saxby's Worldwide objected to the allowance of Mr.

Katz's claim.  (*See Saxby's Worldwide*, Docket No. 158.)   This Court permitted extensive discovery on the objection and conducted a two-day trial regarding the allowance of Mr. Katz's claim for voting purposes under Rule 3018(a) of the Federal Rules of Bankruptcy Procedure. On August 20, 2010, this Court disallowed Mr. Katz's claim in its entirety for voting purposes. (*See* Ex. B hereto, *Saxby's Worldwide*, Docket No. 412.)  In so doing, this Court found Mr. Katz's $50,000,000 valuation of Saxby's Coffee to be fatally "**flawed**" and "**of no value at all**." (*See* Ex. B hereto, at pp. 25-26, *Saxby's Worldwide*, Docket No. 412.)  Mr. Katz later withdrew his Proof of Claim in *Saxby's Worldwide* to avoid the entry of a final judgment disallowing his claim and the collateral estoppel effect of such final judgment in the State Court Action.  (*See Saxby's Worldwide*, Docket No. 520.)

On November 3, 2010, the State Court conducted a "prove-up hearing" in the State Court Action with respect to damages against Saxby's Coffee, WSC and Mr. Carroll. The State Court entered judgment against these State Court Defendants in the amount of $23,887,032.63, which was later adjusted to $23,811,358.52.  (*See* State Court Final Judgment Order, Grasso Docket No. 93, Ex. A at p. 2.)  The $23,811,358.52 judgment is comprised of compensatory damages in the amount of $5,896,076.52 ***and punitive damages in the amount of $17,915,282.00***.  (*See* State Court Memorandum Opinion, Grasso Docket No. 93, Ex. A at pp. 10-11.)  Incredibly, the compensatory damages awarded includes $5,400,000 in compensatory damages based entirely on Mr. Katz's self-serving and wholly unsupported testimony that Saxby's Coffee was worth $50,000,000 at the time it sold its assets to Saxby's Worldwide, ***testimony which this Court had previously found to be "flawed" and "of no value at all."***

Even more incredibly, the State Court's award of almost $18,000,000 against Saxby's Coffee, WSC and Mr. Carroll was not based on any evidence at all.  Instead, the State Court

concluded that, as the result of the orders of default, the State Court Defendants had admitted the allegations contain in Paragraphs 69, 70, 82 and 83 of the State Court Complaint and that these allegations alone were sufficient to justify the imposition of almost $18,000,000 in punitive damages. Paragraphs 69, 70, 82 and 83 of the State Court Complaint allege that Saxby's Coffee and the other State Court Defendants transferred the assets of Saxby's Coffee, Inc. without receiving reasonably equivalent value or with the intent to defraud Mr. Katz. (*See* State Court Complaint, Ex. A hereto, ¶¶ 69, 70, 82 and 83.) While these paragraphs contain conclusory allegations that State Court Defendants acted intentionally, willfully and maliciously, these paragraphs do not contain a single well-pleaded fact to support these conclusory allegations. *Id*.

Once this Court's preliminary injunction expired, the State Court scheduled a "prove-up hearing" with respect to Mr. Katz's damage claim against Mr. Grasso, Mr. Bayer and Mr. Meakim. The State Court conducted the "prove-up hearing" with respect to Mr. Katz's damages against Mr. Meakim. Based on the evidence presented at the prior "prove-up hearing," the State Court entered judgment against Mr. Meakim in the amount of $23,712,718.52, which is comprised of $5,928,180.73 in compensatory damages and $17,784,538.89 in punitive damages. (*See* Grasso Docket No. 93, Ex. A at p. 6.) The State Court's decision simply adopted the reasoning from its November 3, 2010 Memorandum Opinion. (*See* State Court Final Judgment Order, Grasso Docket No. 93, Ex. A.) Mr. Grasso and Mr. Bayer filed bankruptcy staying the prosecution of the State Court Action against Mr. Grasso and Mr. Bayer.

### III. ARGUMENT

The State Court's entry of default as to liability against Mr. Grasso has no *res judicata* or collateral estoppel effect and, therefore, this Court must consider Mr. Katz's claim on its merits. The State Court has not entered a final judgment against Mr. Grasso, and the order of default

entered against Mr. Grasso has no *res judicata* or collateral estoppel effect. In deciding whether the doctrines *res judicata* and collateral estoppel apply, federal courts look to state law to decide what effect to give state-court judgments. *See, e.g., Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 548 (3d Cir. 2006). **Under Illinois law, only final orders are entitled to res judicata or collateral estoppel effect**. *See, e.g.*, *People v. Gill*, 379 Ill. App. 3d 1000, 1012, 886 N.E.2d 1043, 1053 (2008) ("*res judicata* also requires a final judgment on the merits"); *In re Marriage of Tutor*, 2011 Ill. App. 2d 100187, 956 N.E.2d 588, 593 (2011) (same); *People v. Rodriguez*, 402 Ill. App. 3d 932, 941, 932 N.E.2d 113, 121 (2010) (collateral estoppel requires final judgment on the merits); *Ford Motor Credit Co. v. Cornfield,* 395 Ill. App. 3d 896, 910, 918 N.E.2d 1140, 1153 (2009) (same).

Because the State Court has not yet determined the amount of damages to be awarded against Mr. Grasso, the State Court's order of default is not a final judgment under Illinois law. "A judgment is deemed final, for purposes of *res judicata*, if it terminates litigation on the merits so that the only issue remaining is proceeding with its execution." *SDS Partners, Inc. v. Cramer*, 305 Ill. App. 3d 893, 896, 713 N.E.2d 239, 240 (1999). "A default order as to liability only does not constitute a final order." *Miura v. Famous Cab Co.*, 107 Ill. App. 3d 803, 806, 438 N.E.2d 530, 533 (1982); *see also Alderson v. Berol Products Div., Berol Corp.*, 38 Ill. App. 3d 139, 141, 142, 347 N.E.2d 213, 214 (1976) (judgment on issue of liability only with damages yet to be ascertained is not final).

On the merits, Mr. Katz's claim should be disallowed in its entirety for the same reasons that this Court disallowed Mr. Katz's claim against Saxby's Worldwide for voting purposes. In disallowing Mr. Katz's claim, this Court found that the sale complained of in the State Court Complaint was not fraudulent or tortious and that Mr. Katz did not suffer any damages. (*See* Ex.

B hereto, *Saxby's Worldwide*, Docket No. 412.)  Virtually all the compensatory damages claimed by Mr. Katz were premised on Mr. Katz's self-serving and wholly unsupported assertion that Saxby's Coffee was worth $50,000,000 at the time it sold its assets to Saxby's Worldwide for $600,000 and that his alleged 10.8% interest therein was worth $5,400,000.  This Court expressly rejected Mr. Katz's valuation:

> Third, to the extent that Marshall Katz's dissatisfaction with this transaction is based on his view that the $600,000 consideration paid by Grasso and Meakim was grossly inadequate, and relying for that belief on his testimony that SCI's value in June and July of 2007 was $50 million.  I am totally unpersuaded by the evidence that he offered in support of that valuation.  I find Marshall Katz's valuation flawed in that it was based on assumptions regarding future cash flows set out in a business plan whose purpose was to solicit investment, not based on any reliable report regarding the financial position of the company.  The assumptions had no historic basis in company performance.  Simply put, the projections were wildly over-optimistic, because they were based on income derived from contracts not yet in existence and whose development required an infusion of capital that was not made prior to the asset transaction. As a finder of fact -- as the finder of fact it is within my providence to decide the weight, if any, to be given Marshall Katz's valuation testimony. Here I find that testimony to be of no value at all. I reject it in its entirety.  As a consequence Marshall Katz has offered no valuation evidence that would support a finding that the consideration for sale of SCI's assets was not reasonably equivalent value.

(*See* Ex. B hereto, at pp. 25-26, *Saxby's Worldwide*, Docket No. 412).

Even if this Court were to allow some or all of Mr. Katz's claim for roughly $6,000,000 in compensatory damages (which it should not), this Court should certainly disallow Mr. Katz's claim for roughly $18,000,000 in punitive damages because, rather than punishing Mr. Grasso, the allowance of punitive damages would punish Madison and Mr. Grasso's other creditors. Bankruptcy courts have the equitable power to disallow punitive damages claims and routinely do so. *See, e.g., In re A.H. Robins Co., Inc.*, 89 B.R. 555 (E.D. Va. 1988); *In re FF Holdings*

*Corp. & Farm Fresh Inc.*, No. 98–37/38–JFF, 1998 U.S. Dist. LEXIS 10741 (D. Del. Feb. 17, 1998). The disallowance of punitive damage claims in bankruptcy cases stems from the penal nature of punitive damages. The traditional state law goal of punishing the debtor is simply not attainable in bankruptcy cases. Allowing a claim for punitive damages in bankruptcy "would serve more to punish unsecured creditors than it would to punish the debtor." *In re Hillsborough Holdings Corp.*, 218 B.R. 617, 620 (Bankr. M.D. Fla. 1991). When the debtor's creditors have not been paid in full, permitting distribution for punitive damages only harms the other unsecured creditors and fails to serve as a punishment for the debtor. *See Olympia Equipment Leasing Co. v. Western Union Telegraph Co.*, 786 F.2d 794, 797 (7th Cir. 1986). "[T]o allow a claim for punitive damages in these circumstances would make innocent creditors bear the burden of the debtor's wrongdoing." *Id.* Allowing Mr. Katz's claim for almost $18,000,000 in punitive damages would require Madison and Mr. Grasso's other creditors to bear the burden of Mr. Grasso's alleged wrongdoing.

## IV. CONCLUSION

For the reasons set forth above, Madison prays that this Court disallow Mr. Katz's claim in its entirety and grant such further relief as this Court deems just and proper.

DATED: July 16, 2012.

        Respectfully submitted,

        /s/ Roger G. Jones
        Roger G. Jones (Tenn. B.P.R. No. 20877)
        Admitted *Pro Hac Vice*
        BRADLEY ARANT BOULT CUMMINGS LLP
        1600 Division St., Ste. 700
        Nashville, TN  37203
        (615) 252-2323
        RJones@babc.com


        /s/ Jeffery T. Grossman
        Jeffrey T. Grossman, Esquire
        GROSSMAN LAW FIRM, P.C.
        1333 Race Street
        Philadelphia, PA 19107
        (215) 231-9936
        jgrossman@grossmanfirm.com
        *Attorneys for Madison Capital Company, LLC*

# **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing was served on July 16, 2012, on all parties consenting to service through the Court's CM/ECF system and by U.S. Mail, postage pre-paid, to the following parties:

| | |
|---|---|
| Dimitri L. Karapelou<br>Law Offices of Dimitri L. Karapelou, LLC<br>1600 Market Street, 25th Floor<br>Philadelphia, PA 19103 | Paul J. Winterhalter, Esquire<br>Law Office of Paul J. Winterhalter, P.C.<br>1717 Arch Street, Suite 4110<br>Philadelphia, PA 19103<br>pwinterhalter@pjw-law.com |
| Dave P. Adams<br>United States Trustee<br>833 Chestnut Street, Suite 500<br>Philadelphia, PA 19107<br>d.p.adams@usdoj.gov | Kevin P. Callahan<br>United States Trustee<br>Department of Justice<br>833 Chestnut Street, Suite 500<br>Philadelphia, PA 19107<br>k.p.callahan@usdoj.gov |
| Jeffrey C. Venzie, Esquire<br>Venzie, Phillips, & Warshawer<br>2030 Chancellor Avenue<br>Philadelphia, PA 19103<br>jvenzie@venzie.com | William J. Levant, Esquire<br>Kaplin Stewart, Meloff, Reiter & Stein, P.C.<br>910 Harvest Drive<br>P.O. Box 3037<br>Blue Bell, PA 19422<br>wlevant@kaplaw.com |
| Bonnie Golub, Esquire<br>Weir & Partners, LLP<br>The Widner Building<br>1339 Chestnut Street, Suite 500<br>Philadelphia, PA 19107<br>bgolub@weirpartners.com | Gretchen Santamour, Esquire<br>Steven J. White, Esquire<br>Stradley, Ronon, Stevens, & Young, LLP<br>2600 One Commerce Square<br>Philadelphia, PA 19103<br>gsantamour@stradley.com<br>swhite@stradley.com |
| Holly E. Smith, Esquire<br>Ciardi, Ciardi & Astin, P.C.<br>One Commerce Square<br>2005 Market Street, Suite 1930<br>Philadelphia, PA 19103<br>hsmith@ciardilaw.com | Linda L. Kelly, Attorney General<br>Christopher R. Momjian, Senior Deputy Attorney General<br>Office of the Attorney General<br>21 South 12th Street, 3rd Floor<br>Philadelphia, PA 19107<br>crmomjian@attorneygeneral.gov |

Gary M. Schildhorn, Esquire
Brya M. Keilson, Esquire
Eckert, Seamans, Cherin, & Mellot, LLC
Two Liberty Place
50 South 16th Street, 21st Floor
Philadelphia, PA 19102
gschildhorn@eckertseamans.com
bkeilson@eckertseamans.com

Marisa J. Cohen, Esquire
Margaret Gairo, Esquire
Kevin T. McQuail, Esquire
McCabe, Weisberg, and Conway, P.C.
123 South Broad Street
Philadelphia, PA 19109
mgairo@mwc-law.com

Michael Gigliotti, Esquire
Kashkashian, Franklin, & Associates
10 Canal Street, Suite 204
Bristol, PA 19007
kashlaw@aol.com
Ronald S. Gellert, Esquire
Eckert, Seamans, Cherin, & Mellot, LLC
Two Liberty Place
50 South 16th Street, 21st Floor
Philadelphia, PA 19102
rgellert@eckertseamans.com

GE Capital Retail Bank
c/o Recovery Management Systems
Corporation
25 Southeast 2nd Avenue, Suite 1120
Miami, FL 33131-1605
Attention: Ramesh Singh
claims@recoverycorp.com

Aaron J. Margolis, Esquire
Duane Morris, LLP
30 South 17th Street
Philadelphia, PA 19107
amargolis@duanemorris.com

Brian H. Smith, Esquire
Christopher McDonald, Esquire
Lamm Rubenstone, LLC
3600 Horizon Boulevard, Suite 150
Trevose, PA 19053
bsmith@lammrubenstone.com
cmcdonald@lammrubenstone.com

Brian M. Kile, Esquire
Grenen & Birsic, P.C.
One Gateway Center, 9th Floor
Pittsburg, PA 15222
bkile@grenenbirsic.com

Edward J. Hayes, Esquire
Fox Rothschild, LLP
200 Market Street, 20th Floor
Philadelphia, PA 19103
EHayes@foxrothchild.com
Adam A. Lewis, Esquire
Morrison & Foster, LLP
425 Market Street
San Francisco, CA 94105
alewis@mofo.com

James Greenberg , Esquire
Duane Morris, LLP
1940 Route 70 East, Suite 200
Cherry Hill, NJ 08003
jgreenberg@duanemorris.com

James K. Haney, Esquire
Wong Fleming, P. C.
1515 Market Street, Suite 820
Philadelphia, PA 19102
jhaney@wongfleming.com

| | |
|---|---|
| Joseph McMahon, Jr.<br>Daniel K. Astin, Esquire<br>John D. McLaughlin, Jr.<br>Ciardi, Ciardi, & Astin,<br>919 North Market Street, Suite 700<br>Wilmington, DE 19801<br>jmcmahon@ciardilaw.com | Stephen J. Labroli, Esquire<br>Leonard, Sciolla, Hutchinson, Leonard, &<br>Tinari, LLP<br>Two Penn Center<br>1500 John F. Kennedy Boulevard, Suite 1910<br>Philadelphia, PA 19102<br>slabroli@leonardsciolla.com |
| Issac M. Gabriel, Esquire<br>Quarles & Brady, LLP<br>One Renaissance Square<br>Two North Central Avenue<br>Phoenix, AZ 85004<br>isaac.gabriel@quarles.com | |

                                        /s/ Roger G. Jones
                                      Roger G. Jones