IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| JOSEPH GRASSO, | : | Case No. 12-11063(MDC) |
|  | : |  |
| Debtor | : | Hrg Date: August 28, 2012 at 11:00 am |
|  | : | Location: 900 Market St., 2nd Floor |
|  |  | Courtroom No. 5 |
|  | : | Philadelphia, PA 19107 |

**OBJECTION OF JOSEPH GRASSO, DEBTOR,
TO THE GENERAL UNSECURED CLAIM NO. 26
OF MARSHALL J. KATZ
PURSUANT TO 11 U.S.C. § 502(b)(1)**

Joseph Grasso (the "Debtor"), by and through his legal counsel, the Law Offices of Paul J. Winterhalter, P.C., hereby objects (the "Objection") to the general unsecured claim of Marshall J. Katz ("Mr. Katz") filed (the "Claim") [Claim No. 26-1]. In support of this Objection, the Debtor respectfully states as follows:

1. On February 6, 2012 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2. The Debtor continues to remain in possession and control of his assets and financial affairs as a debtor-in-possession pursuant to the authority set forth under Sections 1107 and 1108 of the Bankruptcy Code.

3. On May 2, 2012, Mr. Katz filed a proof of claim in this bankruptcy proceeding in the amount of $23,712,718.52. A true and correct copy of Mr. Katz's Proof of Claim is attached hereto as Exhibit "1."

1

4. The Proof of Claim as filed was not executed by Mr. Katz or an authorized agent of Mr. Katz. *See* Exhibit "1."

5. The Claim was not accompanied by any documentation that would establish the alleged value of the Claim or provides any detail on how the alleged amount of the claim was determined. The Claim was not accompanied by any supporting documentation that would sustain the foundation upon which the Claim was calculated or based. The Claim as filed provides no sufficient notice as to the basis for the claim.

6. Mr. Katz's Claim filed in this bankruptcy proceeding for $23,712,718.52 is believed to be based solely upon certain allegations made in a lawsuit he had instituted against Saxbys Coffee, Inc. , hereinafter referred to as "SCI," and certain claimed successor parties and its principals, one of whom is the individual Debtor. There has never been any substantive consideration by any trier of fact as to the merits of the allegations made in the Illinois State Court Complaint against any of the named defendants in the Illinois State Court Complaint, nor has there been any substantive consideration as to the legitimacy or amount of any claim against this Debtor.

7. The Claim was not filed in accordance with the Federal Rules of Bankruptcy Procedure and, therefore, does not constitute prima facie evidence of the validity and amount of the Claim. At any hearing on this claim objection, Mr. Katz will have the burden of proof going forward and must prove the existence of the Claim, including establishing its legal liability as to the Debtor, as well as the amount of the Claim, all by a preponderance of the evidence. Furthermore, the Debtor objects to the Claim as unenforceable against the Debtor or property of the Debtor pursuant to Section 502(b)(1) of the Bankruptcy Code. The Claim is based on pending litigation for monies allegedly owed to Mr. Katz by SCI, a Georgia corporation, and not

the Debtor. The Claim wrongfully assumes that Mr. Grasso is in some way liable for the claims Mr. Katz seeks to recover from SCI.

      **A.**     **The Claim was not executed in accordance with Federal Rule of Bankruptcy Procedure 3001(b), and therefore the Claim shall not constitute prima facie evidence of the validity and amount of the Claim pursuant to Federal Rule of Bankruptcy Procedure 3001(f).**

8. Federal Rule of Bankruptcy Procedure 3001 provides the directives for the form, content, execution, and evidence required in support of a Proof of Claim.

9. Although "[t]he burden of proof for claims brought in the bankruptcy court under 11 U.S.C.A. § 502(a) rests on different parties at different times," the claimant must initially allege facts sufficient to support a claim. *Payne v. Lampe*, 665 F. 3d 506, 514 (3d Cir. 2011; *In re Allegheny International, Inc.,* 954 F.2d 167, 173 (3d Cir. 1992).

10. "A proof of claim that is executed and filed in accordance with [the Federal Rules of Bankruptcy Procedure] shall constitute prima facie evidence of the validity and amount of the claim." F.R.B.P. 3001(f).

11. "If the evidentiary presumption provided by Rule 3001(f) applies, it remains in force even after an objection to a claim is filed." *In re Moussa Sacko*, 394 B.R. 90, 98 (Bankr. E.D. Pa. 2008) (citing *In re Kincaid*, 388 B.R. 610, 613 (Bankr. E.D. Pa. 2008)).

12. In that case, the "objecting party carries the burden of going forward with evidence in support of its objection which must be of probative force equal to that of the allegations of the creditor's proof of claim" and "the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *Allegheny*, 954 F.2d at 173-74; *In re Nixon*, 400 B.R. 27, 33 (Bankr. E.D. Pa. 2008).

3

13. If an objecting party is successful in "overcoming the prima facie effect of the proof of claim, the ultimate burden or persuasion then rests on the claimant." *Nixon*, 400 B.R. at 33 (citing *Allegheny*, 954 F.2d at 173-74).

14. If a proof of claim is not executed and filed properly in accordance with the Federal Rules of Bankruptcy Procedure, "the burden going forward and proving the claim by [a] preponderance of the evidence remains on the claimant." *Moussa,* 394 B.R. at 98 (citing *Kincaid,* 388 B.R. at 614; *In re Campbell*, 336 B.R. 430, 432 (B.A.P. 9th Cir. 2005)).

15. A proof of claim not filed in accordance with the Federal Rules of Bankruptcy Procedure does not constitute prima facie evidence of the validity and amount of a claim. See F.R.B.P. 3001(f); *Moussa*, 394 B.R. at 98.

16. Federal Rule of Bankruptcy Procedure 3001(b) provides that "[a] proof of claim shall be executed by the creditor or the creditor's authorized agent."

17. The Claim that is the subject of this Objection was not executed by Mr. Katz or by an authorized agent of Mr. Katz in express conformity to the Federal Rule of Bankruptcy Procedure 3001(b). *See* Exhibit "1." While it is unclear whether an attorney for the purported creditor may execute a proof of claim on behalf of an alleged creditor, the instructions to the Official Proof of Claim form mandates the authorized agent have appended a required Power of Attorney Form to evidence his or her legal authorization to sign the originating claim document on behalf of the purported creditor.

18. Mr. Katz failed to execute and file the Claim or the Power of Attorney Document in accordance with the Federal Rules of Bankruptcy Procedure; as a result the Claim does not constitute prima facie evidence of the validity and amount of the Claim, and the burden of proof going forward with evidence of any claim remains with Mr. Katz.

19. Mr. Katz must prove both the validity of the Claim against the Debtor and the amount of the Claim by a preponderance of the evidence at the hearing on this matter.

### B. The Claim is supposedly for money allegedly owed to Mr. Katz by SCI, and not the Debtor, and therefore the Claim is unenforceable against the Debtor and property of the Debtor pursuant to 11 U.S.C. § 502(b)(1).

20. Pursuant to Section 502(a) of the Bankruptcy Code, "[a] claim or interest, proof of which is filed under Section 501 of this title, is deemed allowed, unless a party in interest…objects."

21. As a debtor under the Bankruptcy Code, the Debtor in this matter is an interested party in this proceeding and objects to the Claim presented by Mr. Katz pursuant to 11 U.S.C. § 502(b)(1).

22. "[I]f such objection to a claim is made, the court…shall determine the amount of such claim…and shall allow such claim in such amount, except to the extent that the claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured."  11 U.S.C. § 502(b)(1).

23. "To determine whether claims are enforceable for bankruptcy purposes, [Section] 502 relies upon applicable non-bankruptcy law." *In re Combustion Engineering, Inc.,* 391 F.3d 190, 245 (3d Cir. 2004) (citation omitted).

24. "A claim against the bankruptcy estate, therefore, "will not be allowed in a bankruptcy proceeding if the same claim would not be enforceable against the debtor outside of bankruptcy."" *Id*. (quoting *United States v. Sanford*, 979 F.2d 1511, 1513 (11th Cir. 1992).

25. The Claim of Mr. Katz is for monies allegedly owed to Mr. Katz by SCI, a Georgia corporation, which is wholly unrelated to the Debtor, who was a principal of the entity who had acquired certain of the assets of SCI for independent consideration in August of 2007.

26. SCI was duly incorporated under the laws of the State of Georgia on August 22, 2005.

27. SCI was originally engaged in the business of franchising retail specialty coffee shops and related activities.

28. Pursuant to a letter agreement dated August 1, 2006 drafted by Mr. Katz, SCI entered an agreement with Mr. Katz for the purposes of his providing financial advisory and investment banking services to SCI. Compensation to Mr. Katz under the financial advisory agreement was to be earned upon the placement or production of capital investment or financing generated for SCI.

29. Mr. Katz never produced any financing or capital investment monies for SCI.

30. Pursuant to a separate Stock Purchase and Subscription Agreement also dated August 1, 2006, SCI agreed to offer to Mr. Katz, and Mr. Katz agreed to subscribe for and received the right to purchase from SCI, two million five hundred thousand (2,500,000) shares of common stock representing approximately 10% of the available equity interests in SCI.

31. Sometime in late July or early August of 2007, Mr. Katz attempted to effectuate his rights under the Stock Purchase and Subscription Agreement by off-setting the fixed subscription price against expenses he claimed SCI owed to him at the time and tendered the balance of the subscription price by check which was never negotiated by SCI.

32. The claims of Mr. Katz as alleged in an Illinois State Court Complaint filed originally on August 31, 2007 and subsequently Amended in June of 2009 arise solely out of

these aforementioned contractual dealings with SCI. Included in the Illinois State Court Complaint are unsupportable allegations that Saxbys Coffee Worldwide, LLC, hereinafter referred to as "SCW," the company that acquired certain of the assets of SCI for $600,000, and a legion of other parties, including Mr. Grasso as an owner of SCW, are also liable to Mr. Katz as successors in interest to SCI. As stated, there has never been any substantive adjudication of the merits of any of Mr. Katz's claims against SCI, or on any of the alleged successor claims.

33. Pursuant to an Asset Purchase Agreement dated July 30, 2007 (the "SCW Asset Purchase Agreement"), SCW agreed to purchase certain assets of SCI, a Georgia corporation, for cash and the assumption of certain tax obligations.

34. The SCW Asset Purchase Agreement contained certain indemnification provisions whereby SCI agreed to indemnify and hold the SCW, its stockholders, officers, directors, and employees harmless from and against any and all claims and liabilities, including, but not limited to, all of the liabilities of SCI relating to its business, with the exception of certain aforementioned assumed federal tax obligations.

35. "Under the well-settled rule of corporate law, where one company sells or transfers all of its assets to another, the second entity does not become liable for the debts and liabilities, including torts, of the transferor." *Polius v. Clark Equipment Co.,* 802 F.2d 75, 77 (3d Cir. 1986) (citation omitted).

36. Pursuant to the SCW Asset Purchase Agreement, SCW did not assume any liabilities of SCI, with the exception of certain federal tax liabilities. SCW was a separate and distinct legal entity from SCI. SCW not liable or responsible for the general claims against SCI.

7

37. SCI and SCW did not consolidate their assets or effectuate a merger of any kind, nor was there any intent on the part of the contracting parties to effectuate a merger or consolidation rather than a sale of assets.

38. Following the acquisition of the certain assets and interests of SCI, SCW relocated its primary business office to Conshohocken, Pennsylvania, where the new equity owners were based.

39. SCI did not cease its business and dissolve as soon as practically and legally possible following the execution of the SCW Asset Purchase Agreement.

40. SCW did not assume liabilities ordinarily necessary for the uninterrupted continuation of the business of SCI.

41. SCW did not purchase the assets of SCI with shares of its own stock. SCW is owned by Joseph Grasso ("Mr. Grasso") (70%) and Kevin Meakim ("Mr. Meakim") (30%), own the membership interests in the limited liability company formed to acquire the assets and operate its business. Prior to the sale of the assets of SCI, neither Mr. Grasso nor Mr. Meakim owned any of the shares of outstanding common stock of SCI nor ever had any interest in SCI.

42. The sale of the assets of SCI to SCW was not fraudulent, nor did was it intended to provide an escape from liability of the creditors of SCI. SCI did not have sufficient revenue to support its business operations and was unable to pay its debts and obligations as they were coming due.

43. While the SCW former core business classification may similarly be considered a franchisor of specialty retail coffee shops, SCW was not a mere continuation of SCI. After acquiring certain of the assets of SCI, SCW subsequently engaged in a substantial expansion and re-morphing of the business. The new equity owners invested substantial new capital, acquired

8

additional locations, expanded and integrated new vertical facets into the business plan and design.

44. SCW had its own financial challenges, including the alleged claim of Mr. Katz against SCW. SCW commenced its own chapter 11 bankruptcy proceeding on August 5, 2009 in the United States Bankruptcy Court for the Eastern District of Pennsylvania under case number 09-15898(ELF).

45. Mr. Katz filed a Proof of Claim in the SCW bankruptcy in the amount of $14,378,291.36 but after years of contested litigation following the filing of an objection to this claim in the SCW bankruptcy, Mr. Katz withdrew his claim against SCW.

46. SCW subsequently sold its assets following the confirmation of its Chapter 11 Plan of Reorganization to SXB Acquisitions, LLC. Mr. Grasso has no involvement or interest in SXB Acquisitions, LLC.

47. Mr. Katz has failed to allege any facts whatsoever sufficient in the Claim to support a legal liability of the Debtor to Mr. Katz because no legal liability exists. The description of the claim against Mr. Grasso fails to meet even the minimal requirements recently posited as sufficient to support the basis for alleged liability. *Payne v. Lampe*, 665 F. 3d 506, 514 (3d Cir. 2011).

48. Mr. Katz does not have nor ever had any contractual relationship with Mr. Grasso.

49. Mr. Grasso owes no duty to Mr. Katz under any contractual agreement Mr. Katz may have had with SCI prior to the sale of certain of its assets to SCW.

50. Mr. Grasso did not engage in any acts or actions which in any way may have caused harm or damages to Mr. Katz or is liable to Mr. Katz in any way, including any conspiracy theory.

51.    At no time did Mr. Grasso induce, entice, or conspire with any principal of SCI to interfere or harm the contractual or equitable claims Mr. Katz had or may have had under his Financial Advisory Contract or his Subscription Agreement with SCI.

52.    SCW paid well more than reasonable value in August of 2007 for the assets acquired from SCI.

53.    There is no explanation or calculation included in support of the Claim that establishes the basis for valuing the Claim at $23,712,718.52.

54.    The Claim alleged by Mr. Katz is legally unenforceable against the Debtor or property of the Debtor pursuant to applicable law, and the Objection of the Debtor to the Claim must be sustained.

WHEREFORE, the Claim of Mr. Katz was not filed in accordance with the Federal Rules of Bankruptcy Procedure and does not constitute prima facie evidence of the validity and amount of the Claim. Mr. Katz has the burden of proof and is required to prove any Claim by establishing its legal validity as to the Debtor, as well its value, by a preponderance of the evidence. It is respectfully presented that the Claim of Mr. Katz is unenforceable against the Debtor or property of the Debtor pursuant to Section 502(b)(1) of the Bankruptcy Code. The Claim is based presumptively on allegations made in an Illinois State Court Complaint, where Mr. Katz alleged that he is owed monies as a result of transactions and contractual obligations he had with SCI, not the Debtor. The Debtor has absolutely no liability whatsoever for claims against SCI, and therefore the Debtor objects to the Claim filed by Mr. Katz. The Debtor

respectfully requests that this Honorable Court enter an Order sustaining his objection to the Claim, directing that the Claim be disallowed in its entirety, and granting such other and further relief as this Honorable Court deems just and proper.

          Respectfully submitted,

          *Law Offices of*
          **PAUL J. WINTERHALTER, P.C.**

          By: */S/ P.J. Winterhalter*
          PAUL J. WINTERHALTER
          1717 Arch Street, Suite 4110
          Philadelphia, PA 19103
          Telephone: (215) 564-4119
          Facsimile: (215) 564-5597
          Email: pwinterhalter@pjw-law.com
          *Attorneys for the Debtor*
          *Joseph Grasso*

Dated: July 16, 2012