## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| JOSEPH GRASSO, | : | |
| DEBTOR. | : | BANKRUPTCY NO. 12-11063-MDC |

---

# MEMORANDUM IN SUPPORT OF ORDER

BY: MAGDELINE D. COLEMAN, UNITED STATES BANKRUPTCY JUDGE

## INTRODUCTION

This Memorandum is consistent with this Court's Order dated June 12, 2013 [Docket No. 652] (the "Order"), granting the conversion of Joseph Grasso's ("Debtor" or "Grasso") Chapter 11 case to Chapter 7 and is submitted pursuant to Local Rule 8001-1(b) to further expound upon the reasons for the Order.

On March 22, 2013, Marshall Katz ("Katz") filed an Expedited Renewed Motion to Convert this Case to a Chapter 7 and a (Corrected) Expedited Renewed Motion to Convert this Case to a Chapter 7 (collectively, the "Katz Motions") renewing his request that this Court convert the Debtor's case to Chapter 7 pursuant to Section 1112(b) of the Bankruptcy Code, 11 U.S.C. Section 101 *et seq.* Madison Capital Company, LLC ("Madison") filed a response to the Katz Motions joining in the conversion request (the "Madison Motion," and together with the Katz Motion, the "Renewed Conversion Motion").

The Debtor and Christine C. Shubert, Chapter 11 Trustee (the "Chapter 11 Trustee") each filed objections to the Renewed Conversion Motion asserting that there is a reasonable likelihood of plan confirmation and that conversion is not in the best interest of creditors. The Bancorp

Bank ("Bancorp") also filed an objection to the Katz Motions (the "Bancorp Response") requesting that this Court deny the Renewed Conversion Motion without prejudice so as to allow conversion to be reconsidered if it later becomes apparent that a feasible plan of reorganization cannot be confirmed.[1]

A hearing on the Renewed Conversion Motion was scheduled for May 28, 2013 (the "Hearing"). On the day before the Hearing, Katz withdrew the Katz Motions based upon a reported settlement with the Debtor of the objections to Katz's proof of claim.[2] As a result, the scheduled Hearing proceeded on the Madison Motion only. The parties presented evidence and oral arguments in support of their position. At the close of trial, the Court took the matter under advisement. After review of the record, the Court found that cause exist pursuant to 11 U.S.C. §1112(b)(4)(A) to convert the Debtor's bankruptcy case to Chapter 7. The Debtor and the Chapter 11 Trustee did not identify or prove (i) any unusual circumstances showing that conversion is not in the best interest of the estate and its creditors exist, and (ii) that there is a reasonable likelihood that a plan will be confirmed. Accordingly, the Court granted the Madison Motion and converted the Debtor's case from Chapter 11 to Chapter 7.

---

[1] Bancorp asserts that it is a joint creditor of the Debtor and his wife and that it is the only creditor who may assert a claim against the Debtor's entireties property. In light of the documents filed by the Debtor and those loan documents attached to Bancorp's Response to Motion to Use Cash Collateral dated November 11, 2012 executed by the Debtor in his capacity as "sole member" of J. Grasso Properties, LLC which therein is warranted to be "the sole general partner" of Curtis Investors, LP and PLB Investors, LP that appear to controvert the Debtor's assertion that his wife holds an interest in the alleged entireties property, this Court at this time cannot determined whether in fact Bancorp holds a secured interest in the property that it believes serves as security for its claim. *See, e.g., In re Jabarin*, 395 B.R. 330, 334 n. 3 (Bankr. E.D. Pa. 2008) (recognizing that a bankruptcy court may take judicial notice of docket entries in a case).

[2] At the Hearing, this Court was informed that Katz had settled his claim. However, this Court was not provided with any evidence regarding the terms of the settlement or of the effect of the settlement, if any, on the prospects for the Debtor's rehabilitation.

**FACTUAL BACKGROUND**[3]

Prior to the filing of the Renewed Conversion Motion, Madison filed, and Katz joined, a motion requesting the Court to convert the Debtor's case to Chapter 7.  The Court denied this motion without prejudice and ultimately ordered the appointment of the Chapter 11 Trustee.  Following her appointment, the Chapter 11 Trustee with the assistance of her professionals, including her accountants, began to investigate the property of the Debtor's estate including the Debtor's interest in various nondebtor entities.

On February 26, 2013, the Chapter 11 Trustee filed a Status Report detailing the initial results of her investigation (the "February Status Report").  The February Status Report revealed that the Debtor, among other things, had caused the sale of three antique automobiles without Court approval and without distributing the proceeds of the sales to his estate: (1) a 2006 Lincoln 8 passenger limousine sold on March 13, 2012; (2) a 1969 Corvette Convertible sold on April 20, 2012; and (3) a 1959 Chevrolet El Camino sold on April 25, 2012 (collectively, the "Antique Automobiles").  The Debtor and the Trustee did not dispute that the Antique Automobiles, or the proceeds of their sales, are property of the Debtor's estate.  For whatever reason, the Debtor has not accounted for the proceeds of the sales of the Antique Automobiles.

The sale of the Antique Automobiles was not the only postpetition transaction that the Debtor had caused and that was disclosed after the appointment of the Chapter 11 Trustee.  He has used funds in which the estate has an interest to purchase at least three automobiles: (1) on February 8, 2012, a pick-up truck was purchased for the benefit of a nondebtor entity with funds that were diverted from the Debtor's estate; (2) on July 9, 2012, a Hummer was purchased for

---

[3] Only the facts relating to the issues addressed in this Memorandum will be detailed.  The Court's Order dated October 16, 2012, and Opinion dated April 4, 2013, *In re Grasso*, Bky. No. 12-11063, 2013 WL 1364088 (Bankr. E.D. Pa. Apr. 4, 2013), provide additional background regarding the Debtor's bankruptcy case.  The facts addressed in this Memorandum constitute this Court's findings of fact for purposes of Fed. R. Civ. P. 52, as incorporated by Fed. R. Bankr. P. 7052, underlying this Court's decision to convert this case.

the benefit of the Debtor with funds that were diverted from the Debtor's estate;[4] and (3) on

August 8, 2012, a Ford L9000 truck was purchased for the benefit of a nondebtor entity with

funds that were diverted from the Debtor's estate.

The Debtor also caused one of his nondebtor entities to make a transfer in the amount of

$20,000 to his son.  The Debtor has alternately characterized this transfer as a gift or as a

payment of deferred compensation.  Because no withholding was done and the Debtor's personal

banker characterized it as gift that was made to fund a down payment on the son's purchase of a

home, the Chapter 11 Trustee believes that this transfer should be characterized as a gift.

In addition to identifying transfers to the Debtor's son, the February Status Report

disclosed that the Debtor had received at least three payments from Curtis Investors, LP that

should have otherwise accrued to his estate.  In July 2012, the Debtor received a payment of

$153,100.  In August 2012, the Debtor received a payment of $130,900.  In September 2012, the

Debtor received a third and final payment of $57,500.  The receipt of these payments was not

disclosed in the Debtor's monthly operating reports filed with this Court or otherwise previously

disclosed to this Court.

The Chapter 11 Trustee also disclosed in the February Status Report that her

investigation had discovered the existence of twenty six entities that the Debtor had not

previously disclosed in his filings with this Court.[5]  Among these undisclosed entities was

JGDG, LLC that the Chapter 11 Trustee stated may be the owner of certain real estate located in

Downingtown, Pennsylvania, and WSC Commercial Real Estate Management, LLC that the

Chapter 11 Trustee stated was responsible for the maintenance and management of the

---

[4] In addition to being purchased with funds diverted from the Debtor's estate, the Hummer was titled in the name of CSI Fleet Services LLC, an entity in which the Debtor holds no interest.

[5] At the Hearing, the Chapter 11 Trustee's accountant testified that a substantial number of these entities were no longer operating, or had been dissolved.  However, several of the undisclosed entities remain active.

Warminster Plaza shopping center.  The Chapter 11 Trustee further alleged that WSC

Commercial Real Estate Management, LLC receives approximately $3,800 per month that

should have been received by the Debtor's estate.  The February Status Report also disclosed that

the Debtor held an ownership interest in a residential property located at 317 Emerald Drive,

Yardley, Pennsylvania.  In the February Status Report, the Trustee stated her intent to file revised

schedules to reflect the Debtor's previously-undisclosed interests in these assets.  Three months

later, the revised schedules remain yet-to-be filed.

At the Hearing, Madison called no witnesses and relied solely on documents in support of

the Madison Motion including (1) the estate's Monthly Operating Report for April 2013, (2) the

February Status Report, and (3) a Status Report prepared by the Chapter 11 Trustee dated April

26, 2013 (the "April Status Report").

The Chapter 11 Trustee and her accountant, Charles Persing, both testified in opposition

to the Madison Motion.  With regard to the estate's ability to propose a plan, the Chapter 11

Trustee testified that, while she and the Debtor were close to putting together a proposed plan,

none could be presently filed with this Court.[6]  She stated that she had yet to be provided with

sufficient information to determine whether she would be able to propose a plan prior to July 31,

2013.  Complicating matters, the Chapter 11 Trustee admitted that any plan would be dependent

upon the estate obtaining outside financing.  She acknowledged that the estate will also need an

infusion of outside capital to continue the operation of the estate for the next two months.

Despite the estate's viability being completely dependent upon outside financing, the Chapter 11

Trustee was unable to submit one iota of evidence in support of the availability of such

---

[6] This Court notes that a draft plan was attached to the Debtor's Objection.  However, this document was not entered
into evidence and the Court heard no testimony and received no evidence with regard to the contents of this plan.
As a result, this Court did not consider this document in rendering its decision.  *See, e.g., In re Domiano*, 442 B.R.
97, 107 (Bankr. M.D. Pa. 2010) (attributing little credence to testimony stating creditors would fair better under a
draft plan when a draft plan was not entered into evidence).

financing.  She stated that the Debtor had informed her of his efforts to obtain financing from his

friends and family and that he had retained an investment advisor to assist him in this endeavor.[7]

However, she admitted that she did not know upon what terms such financing could be made

available to the estate.  She did not even know what amount of financing the estate would be

required to pay the estate's administrative creditors, which, in addition to the professional fees,

may also include the repayment of distributions received by the Debtor without Court approval.

Her testimony regarding the availability of financing was corroborated by Mr. Persing who

agreed that any plan would be contingent upon outside financing and that he had not been

provided with any evidence, other than the Debtor's oral assurances, substantiating whether such

financing would be in fact available to the estate.  No evidence regarding the amount of

financing required, the terms upon which such financing may be available, whether the Debtor

had obtained any commitments from parties willing to provide such financing or even the

identity of such parties was made available to this Court.  Both the Chapter 11 Trustee and her

accountant's testimony regarding the availability of outside financing was based entirely on

conversations with the Debtor.  No corroborating evidence was provided.

The Chapter 11 Trustee also addressed her opinion with regard to whether conversion

would be in the best interests of the estate and its creditors.  She stated that it was her belief that

conversion would not be in the best interests of creditors because she believed that unsecured

creditors would receive nothing as a result of a liquidation of the estate's assets.  However, when

pressed as to the basis for her opinion, the Chapter 11 Trustee admitted that she lacked any

evidence to support her opinion and in fact required additional information that had not yet been

---

[7] The Chapter 11 Trustee's account testified that he was familiar with the Debtor's investment banker and that the
investment banker was "both reputable and competent."  However, neither the Chapter 11 Trustee nor her
accountant offered any evidence or testimony regarding the activities, if any, the investment banker had undertaken
to finance a plan.

provided by the Debtor to complete a liquidation analysis.  The Chapter 11 Trustee stated that

she lacked sufficient information to conduct a liquidation analysis because, among other reasons,

she had not been provided with the information she needs to complete her fraudulent transfer

analysis.[8]  She then admitted that, after she completed her review, she may in fact recommend

conversion.

Despite filing an objection to the Renewed Conversion Motion, the Debtor did not

personally appear at the Hearing and therefore did not provide any testimony regarding his

alleged efforts to fund a potential plan and the estate's continued operation.  In addition, the

Debtor did not submit documents or offer any witnesses or testimony in support of his

opposition.  Instead, the Debtor relied upon his counsel's arguments against conversion including

that the Madison Motion should be denied because Madison was motivated by ill-will and

animosity toward the Debtor.

Bancorp also appeared at the Hearing.  Like the Debtor, Bancorp did not offer any

evidence or witnesses in support of the opposition to the Renewed Motion.  Like the Debtor,

Bancorp's only role was to present argument in support of the Debtor and the Chapter 11

Trustee's opposition to conversion.  No other creditor or interested party appeared at the Hearing

to oppose the Madison Motion.

## DISCUSSION

### A.    The Standard for Conversion

Section 1112(b)(1) provides that bankruptcy court *shall*, upon a showing of cause,

convert a case to Chapter 7 or dismiss the case "unless the court determines that the appointment

under section 1104(a) of a trustee or examiner is in the best interests of the creditors and the

---

[8] For example, the Chapter 11 Trustee conceded that the Debtor had not provided her with the documents identified by Paragraph (k)(iii) of the February Status Report.

estate." 11 U.S.C. §1112(b)(1); *see also In re Dr. R.C. Samanta Roy Institute of Science Technology, Inc.*, 465 Fed. Appx. 93, 96-97 (3d Cir. 2011) (discussing burden shifting analysis required by §1112(b)(1)); *In re Ramreddy, Inc.*, 440 B.R. 103, 112-13 (Bankr. E.D. Pa. 2009) (discussing burden-shifting approach). The Court had appointed a Chapter 11 Trustee as being in the best interest of creditors, as such, the only issue to be determined by the Court was whether the Debtor's case should be converted to Chapter 7.

Section 1112(b)(4) provides a non-exhaustive list of sixteen examples of events that may constitute cause. 11 U.S.C. §1112(b)(4); 11 U.S.C. §102(3) (instructing courts to interpret the use of "includes" to be not limiting). Here, Madison alleged that cause exists pursuant to §1112(b)(4)(A) because the Debtor's postpetition conduct has caused a "substantial or continuing loss to or diminution of the estate." 11 U.S.C. §1112(b)(4)(A). "[A] party seeking to demonstrate cause under §1112(b)(4)(A) must establish both the "substantial or continuing loss" prong as well as the absence of a reasonable likelihood of rehabilitation." *In re FRGR Managing Member LLC*, 419 B.R. 576, 581 (Bankr. S.D.N.Y. 2009); *see also In re DCNC North Carolina I, LLC*, 407 B.R. 651, 654 (Bankr. E.D. Pa. 2009) (stating §1112(b)(2)(4)(A) burden).

Once a movant establishes that cause for conversion exists, the burden shifts to the opposing party to specifically identify unusual circumstances that show conversion would not be in the best interest of the estate and its creditors and that there is a reasonable likelihood that a plan will be confirmed. 11 U.S.C. §1112(b)(2); *In re American Capital Equipment, LLC*, 688 F.3d 145, 163 (3d Cir. 2012); *In re Dr. R.C. Samanta Roy Institute of Science Technology Inc.*, 465 Fed. Appx. 93, 97 (3d Cir. 2011); *In re Riverbend Community, LLC*, Bky. No. 11-11771, 2012 WL 1030340, *3 (Bankr. D. Del. Mar. 23, 2012); *Fidelity Deposit & Discount Bank v. Domiano (In re Domiano)*, 442 B.R. 97, 107 (Bankr. M.D. Pa. 2010). The unusual

circumstances should relate to conditions that are not common in Chapter 11 cases that explain

why a plan is reasonably likely to be confirmed within a reasonable period of time. *Fidelity*

*Deposit & Discount Bank v. Domiano (In re Domiano)*, 442 B.R. 97, 107 (Bankr. M.D. Pa.

2010) ("unusual circumstances require a showing that there is a reasonable likelihood that a

Chapter 11 plan will be confirmed within a reasonable period of time"); *In re Orbit Petroleum,*

*Inc.,* 395 B.R. 145, 149 (Bankr. D.N.M. 2008) (finding that likelihood that unsecured creditors

would be paid in full was "unusual circumstances" sufficient to show that conversion or

dismissal was not in the best interests of creditors); Alan N. Resnick & Henry J. Sommer, 7

Collier on Bankruptcy ¶1112.05[2] (16th Ed. 2013) ("the word 'unusual' contemplates facts that

are not common to chapter 11 cases generally.").

### B.    Evidence of Substantial or Continuing Loss to or Diminution of the Estate

To meet its initial burden, Madison argued that the following circumstances evidencing

that the Debtor has caused a substantial or continuing loss to and a diminution of the Debtor's

estate: (1) the Debtor's postpetition expenses; (2) the sale of the Antique Automobiles; (3) the

diversion of the three payments from Curtis Investors, LP; and (4) the estate's negative cash

flow.  This Court finds that each establishes the Debtor has caused a substantial or continuing

loss to and a diminution of the Debtor's estate.  The continuing loss and diminution of the

bankruptcy estate is evidenced by the Debtor's conduct that caused the transfer of estate assets,

without Court or creditor approval, and the Debtor's continuing failure to account for the

proceeds of these transfers.  *See, e.g., In re Harell*, Bky. No. 12-30112, 2013 WL 1403484, *1

(Bankr. S.D. Ga. Mar. 27, 2013) (finding that unauthorized postpetition sale of automobiles and

subsequent failure to account for proceeds of the sales constituted evidence of cause under

§§1112(a)(4)(A) & (B)).

Madison challenged the reasonableness of the Debtor's postpetition expenses, including, but not limited to, his unauthorized expenditure of at least $282,870 of estate assets to fund renovations to his personal residence, the expenditure of $25,506 of estate assets at "Restaurants," $68,300 of estate assets to purchase an automobile, and $20,000 of estate assets to fund gifts to the Debtor's family.  With regard to these transactions, this Court was not provided with any explanation as to why these expenses were required or were otherwise in the best interests of the Debtor's estate or its creditors.  In addition, this Court found that the payment of these expenses was effected outside the purview of this Court by the Debtor through the network of nondebtor entities he owns and controls.  To hide these expenditures from this Court, the Debtor diverted distributions that should have been received by his estate.  Instead, these distributions were received by nondebtor entities which in turn used the distributions to fund their operations as well as to fund the Debtor's personal expenses.  The Debtor's comingling of estate assets with the nondebtor entities constitutes evidence of gross mismanagement of the Debtor's estate and caused a continuing loss and diminution of the bankruptcy estate.  *See, e.g., In re Saraland, LLLP*, Bky. No. 12-30113, 2013 WL 1403338, *1 (Bankr. S.D. Ga. Mar. 27, 2013).[9]

With regard to the postpetition sales of the Antique Automobiles, the Debtor admitted and did not challenge that he caused their sales.  In addition to failing to disclose the sales of the

---

[9] This Court has previously expressed concerns about the propriety of his use of estate assets to finance the operating expenses of his various nondebtor entities.  Contrary to the Debtor's apparent belief, "the debtor, though left in possession ... does not operate [its business], as it did before the filing of the petition, unfettered and without restraint." *Case v. Los Angeles Lumber Products Co.*, 308 U.S. 106 (1939).  Significantly, the Debtor and his representatives concede that he has caused the postpetition transfer of estate assets among the various entities he controls.  To explain his failure nondisclosure, the Debtor characterized these transactions as being within the ordinary course of his *prepetition* business operations.  However, the Debtor's nondisclosure problem is two-fold.  The Debtor failed to disclose these transactions *and* the Debtor failed to disclose his and, more importantly, his estate's interest in the funds that were later commingled among the various entities the Debtor controls.  The Debtor's reliance on §363(c) may excuse his nondisclosure of the former, it does not excuse his nondisclosure of the latter which remains among his §521 duties.

Antique Automobiles to this Court until after the appointment of the Trustee, the Debtor did not account for the proceeds of these sales.

Finally, from the evidence presented, Madison successfully established that the Debtor's estate is suffering a continuing loss as evidenced by the fact that it is presently administratively insolvent.  The administrative insolvency of the Debtor's estate also established the absence of a reasonable likelihood of rehabilitation.  *See, e.g. In re American Capital Equipment, Inc.*, 688 F.3d 145, 163 (3d Cir. 2012); *In re Schriock Const., Inc.*, 167 B.R. 569, 576 (Bankr. D.N.D. 1994) (explaining that the "concept of rehabilitation necessarily hinges upon establishing a cash flow from which current obligations can be satisfied"); *In re Youngwoo Moon*, Bky. No. 12-20731, 2012 WL 6727186, *2 (Bankr. S.D. Ga. Dec. 13, 2012) (finding that ongoing negative cash flow and an inability to satisfy current expenses but for loans from family members constitutes a loss or diminution of the estate).

As disclosed by the April 2013 Monthly Operating Report, the Debtor's total earnings were $979,826 and his total disbursements were $1,521,237.  As of April 30, 2013, the Debtor's estate had a net cash flow of $(581,331).  Despite showing a loss of more than a half million dollars, the financial statements filed with this Court actually understate the estate's total losses. The Debtor's estate continues to incur substantial administrative expenses that are not accounted for in the monthly reports.  Audio recording dated 5/28/2013 @ 3:30:19-3:30:31 pm, Bky. No. 12-11063MDC (the Trustee admits that the Debtor's monthly operating reports do not include an accrual for administrative expenses); *see also, In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 564 (Bankr. M.D. Pa. 2007) (noting that Debtor's monthly operating reports did not account for post-petition administrative expenses and thus overstated the debtor's cash position).[10]  It

---

[10] For the period of October 31, 2012 through December 31, 2012, Bederson & Company, LLP sought reimbursement of a total of $55,601.50.  Application for Compensation *(First Interim)* for Bederson & Company,

appears that the estate's professionals have incurred at least $600,000 during the pendency of

this bankruptcy case.  If the Trustee accounted for the estate's professional expenses, the

monthly operating reports would show that Debtor's estate has had a negative cash flow in excess

of $1,000,000.

From these facts, this Court determined cause exists for conversion under §1112(b)(4)(A)

because Madison established at the Hearing that there has been a continuing loss to or

diminution of the estate.  *See, e.g., In re Tracey Serv. Co*., 17 B.R. 405, 409 (Bankr. E.D. Pa.

1982).[11]

### C.        The Debtor and the Trustee Did Not Meet their §1112(b)(2) Burden

Having found that Madison met its initial burden, this Court then determined whether the

Chapter 11 Trustee and the Debtor had shown "unusual circumstances" that establish that

conversion is not in the best interests of creditors and the estate.  11 U.S.C. §1112(b)(2); *Fidelity*

*Deposit & Discount Bank v. Domiano* (*In re Domiano*), 442 B.R. 97, 107 (Bankr. M.D. Pa.

2010).  To meet their burden, the Debtor and the Chapter 11 Trustee must have also shown a

reasonable likelihood that a Chapter 11 plan may be confirmed within a reasonable period of

---

LLP dated February 6, 2013 [Docket No. 437]; Application for Compensation *(Second Interim)* for Bederson &
Company, LLP, dated February 6, 2013 [Docket No. 439].  This Court had not been provided with the amounts
incurred since this period.  However, at the Hearing, Charles Persing testified that Bederson & Company, LLP had
incurred approximately $150,000.00 in fees for the month of April 2013 alone.  Audio recording dated 5/28/2013 @
5:11:05-5:11:28 pm, Bky. No. 12-11063MDC (testifying the Accountant's billings for the month of April 2013 are
in excess of $150,000.00).

The amounts requested by Bederson & Company, LLP were in addition to $119,336.47, the amount sought by Paul
J. Winterhalter, P.C. for the period of February 6, 2012 to October 31, 2012.  First Application for Compensation for
Paul J. Winterhalter, P.C. dated July 17, 2012 [Docket No. 164]; Second Application for Compensation for Paul J.
Winterhalter, P.C. dated December 28, 2012 [Docket No. 395].

Neither White and Williams LLP nor Flaster/Greenberg, P.C. had filed applications for compensation.  However,
the Trustee estimated White and Williams LLP would seek compensation for approximately $300,000 in services.
Audio recording dated 5/28/2013 @ 3:14:42-3:15:40 pm, Bky. No. 12-11063MDC.

[11] This Court also notes that the Debtor's now discovered unauthorized use of estate assets to fund his personal
postpetition expenses coupled with his failure and/or unwillingness to provide both an explanation of these
transaction and the information to the Trustee and his creditors regarding the nature of his various business interests
constitutes cause to covert the case pursuant to §§1112(b)(4)(B), (D), (F) and (H).

time.  11 U.S.C. §1112(b)(2)(A); *In re Domiano*, 442 B.R. 97, 107 (Bankr. M.D. Pa. 2010).

Because the grounds for conversion include acts and omissions of the Debtor, the Debtor and the

Chapter 11 Trustee were required to show that "there exists a reasonable justification for such act

or omission" and such acts and omissions will be cured within a reasonable time.  *DCNC North*

*Carolina I, L.L.C. v. Wachovia Bank, N.A.*, Civ. No. 09-3775, 2009 WL 3209728, *4 (E.D. Pa.

Oct. 5, 2009) (citing 11 U.S.C. §1112(b)(2)).  At the Hearing, neither the Chapter 11 Trustee nor

the Debtor attempted to address their burden and instead argued that Madison did not meet its

initial burden and therefore they were not required to introduce any affirmative evidence.

Despite the failure of the Chapter 11 Trustee and the Debtor to address their burden, this Court

independently determined whether conversion is in the best interests of the estate and its

creditors.  11 U.S.C. §1112(b)(1); *In re Domiano*, 442 B.R. 97, 109 (Bankr. M.D. Pa. 2010)

(stating that final inquiry required by §1112(b)(1) is the court's determination of whether

conversion or dismissal is in best interests of creditors and the estate); *In re Ramreddy, Inc.*, 440

B.R. 103, 115 (Bankr. E.D. Pa. 2009) (reciting factors a court may consider to determine whether

conversion is in the best interests of the estate and its creditors).

    **i.**       **Unusual Circumstances**

The Chapter 11 Trustee and the Debtor argued that a Chapter 7 liquidation will not

benefit the Debtor's estate and its creditors because the Debtor's unsecured creditors will receive

a greater distribution through a Chapter 11 plan than through a Chapter 7 liquidation.  The

Chapter 11 Trustee and the Debtor wholly failed to articulate what unusual circumstances justify

this inference.  The Debtor and the Chapter 11 Trustee offered no details as to what a Chapter 11

plan would entail or what amount of outside financing would be necessary to confirm a Chapter

11 plan.  Audio recording dated 5/28/2013 @ 3:20:24-3:20:41 pm, Bky. No. 12-11063MDC;

Audio recording dated 5/28/2013 @ 5:06:21-5:06:49 pm, Bky. No. 12-11063MDC.

This Court found that the peculiar characteristics of the Debtor's assets do not constitute

unusual circumstances indicating that conversion is not in the best interest of creditors and the

estate.  Independently evaluating the content of the record, this Court identified two

characteristics of the Debtor's estate that may constitute unusual circumstances: (1) the

allegation that the majority of estate assets are entireties property; and (2) the fact that the

estate's assets are distributed among a network of entities controlled by the Debtor.  Upon

review, this Court found that neither indicated that conversion was not in the best interest of

creditors.

If the majority of estate assets are entireties property, it may be argued that reorganization

may result in a greater distribution as it will permit creditors to receive distributions funded at

least in part from assets that would not otherwise be part of a Chapter 7 estate.  This Court found

this argument to be without merit.  The Debtor failed to provide sufficient information from

which this Court can evaluate whether his assertion that his wife holds any interest in this

property is true.  The Debtor claims to have transferred his interest in the nondebtor entities to

his wife and himself as tenants by the entirety on or about August 15, 2008.  However, this Court

has received numerous loan documents executed by the Debtor after August 15, 2008 that

contain warranties that the Debtor remained the sole owner of his partnership interests.  *See, e.g.,*

Docket No. 334, Exh. C.  Because of the conflicting documentary record, this Court is unwilling

to credit any argument that the alleged entireties property will be made available to his estate

only if the Debtor remained in a Chapter 11 case.  In addition, even if the assets constitute

entireties property, the Debtor's Schedules reflect that he has not exempted these assets from the

estate except to the extent of $10,375.[12]  These assets remain available for distribution to the

Debtor's creditors.

The fact that the Debtor's assets are dispersed among an assortment of nondebtor entities

is similarly unavailing.  It may be argued that reorganization will result in a greater distribution

because the network of entities controlled by the Debtor are worth more as a going concern.  In

the context of an honest and forthright debtor, this argument may have merit.  However, in this

case, the opposite is true.  To date, the Debtor has used his network of nondebtor entities to

siphon assets from his estate.  Based upon his history and the failure of the Chapter 11 Trustee

and Debtor to provide any credible evidence to the contrary, this Court cannot find that the

Debtor will cease using the nondebtor entities as part of his efforts to frustrate his creditors'

collection efforts.  Rather than constituting an unusual circumstance establishing that conversion

is not in the best interests of creditors and the estate, this Court finds that the existence of the

nondebtor entities is likely to result in additional losses to Debtor's estate thereby further

supporting conversion to Chapter 7.

### ii.        Likelihood of Plan Confirmation

In addition to failing to identify unusual circumstances that indicate that conversion is not

in the best interests of creditors and the estate, the Chapter 11 Trustee and the Debtor also failed

to establish that it is likely that a plan will be confirmed within a reasonable period of time.  Both

the Debtor and the Chapter 11 Trustee conceded that they will need at least two months to

determine whether a plan can even be filed.  Presumably, this time would have been used to

obtain from the Debtor the information that to this point he has been unwilling to provide.

Ultimately, this Court found that the Chapter 11 Trustee and the Debtor did not establish a

---

[12] This Court may take judicial notice of the Debtor's schedules.  *See, e.g., In re Dispirito*, 371 B.R. 695, 698
(Bankr. D.N.J. 2007).

reasonable likelihood that a plan will be confirmed because (1) they failed to substantiate the availability of outside financing as required by 11 U.S.C. §1129(a)(11); (2) they failed to establish that any proposed plan would be fair and equitable as required by 11 U.S.C. §1129(b)(1); and (3) they failed to establish that any proposed plan may be proposed in good faith as required by 11 U.S.C. §1129(a)(3).

      **a.**      **Plan Feasibility**

To confirm a plan of reorganization, a bankruptcy court must determine whether a proposed plan of reorganization is feasible. 11 U.S.C. §1129(a)(11). The parties conceded that feasibility of any proposed plan would be dependent upon obtaining financing from the Debtor's friends and family. Audio recording dated 5/28/2013 @ 5:06:50-5:07:35 pm, Bky. No. 12-11063MDC. The Chapter 11 Trustee admitted that outside financing will be required to fund any payment to the Debtor's unsecured creditors. Audio recording dated 5/28/2013 @ 4:57:40-4:57:50 pm, Bky. No. 12-11063MDC. In addition, the Chapter 11 Trustee stated that the Debtor's estate will not be able to pay its administrative expenses without an infusion of capital from a nondebtor entity. Audio recording dated 5/28/2013 @ 3:18:10-3:18:42 pm, Bky. No. 12-11063MDC; Audio recording dated 5/28/2013 @ 4:53 pm, Bky. No. 12-11063MDC.

In addition to being necessary to fund a plan, the parties also conceded that outside financing was necessary to fund the estate's operation prior to the proposal of any plan. The Chapter 11 Trustee stated that she has estimated the cost of maintaining the Debtor's business operation is approximately $50,000 per month. Audio recording dated 5/28/2013 @ 3:17:12-3:17:38 pm, Bky. No. 12-11063MDC. The Chapter 11 Trustee conceded that the Debtor's estate does not have sufficient assets on hand to continue the Debtor's business operation without an

infusion of capital from a nondebtor entity.  Audio recording dated 5/28/2013 @ 3:18:10-3:18:42 pm, Bky. No. 12-11063MDC.

Despite their concession that the likelihood of plan confirmation was entirely dependent upon outside financing, the Chapter 11 Trustee and the Debtor failed to offer evidence of any postpetition financing or the terms of any such financing.  Audio recording dated 5/28/2013 @ 3:20:58-3:21:54 pm, Bky. No. 12-11063MDC.  The Debtor and the Chapter 11 Trustee could not estimate what amount of financing would be necessary to confirm a Chapter 11 plan.  Audio recording dated 5/28/2013 @ 3:20:24-3:20:41 pm, Bky. No. 12-11063MDC; Audio recording dated 5/28/2013 @ 5:06:21-5:06:49 pm, Bky. No. 12-11063MDC.  The Debtor and the Chapter 11 Trustee were not even able to substantiate what efforts have been undertaken to obtain financing.  Lacking any evidence corroborating the Debtor's allegations regarding the availability of outside financing, this Court found that the Chapter 11 Trustee and the Debtor did not meet their burden of establishing a reasonable likelihood that a plan will be confirmed. *Fidelity Deposit & Discount Bank v. Domiano (In re Domiano)*, 442 B.R. 97, 107 (Bankr. M.D. Pa. 2010) (assigning "little credence" to debtor's unsubstantiated opinion that creditors would benefit less from conversion to Chapter 7); *DCNC North Carolina I, L.L.C. v. Wachovia Bank, N.A.*, Civ. No. 09-3775, 2009 WL 3209728, *6 (E.D. Pa. Oct. 5, 2009) (upholding bankruptcy court's determination that based on "meager record" the debtors had not demonstrated the availability of outside financing); *In re Ramreddy, Inc.*, 440 B.R. 103, 114-15 (Bankr. E.D. Pa. 2009) (finding that when a plan is dependent on outside financing a debtor must submit concrete evidence substantiating its efforts to obtain financing to meet its §1112(b)(2)(B) burden).  Based on the lack of evidence regarding the source of funding that the Debtor and Chapter 11 Trustee admitted any proposed plan would require, this Court found that the Debtor and the Chapter 11

Trustee did not come forward with sufficient evidence to demonstrate the feasibility of any

Chapter 11 plan. *Tennessee Publishing Co. v. American Nat'l Bank*, 299 U.S. 18, 22 (1936)

("However honest in its efforts the debtor may be, and however sincere its motives, the ... Court

is not bound to clog its docket with visionary or impracticable schemes for resuscitation."); *In re*

*Sparkle Stor-All Eaton Tp., LLC*, Bky. No. 11-30382, 2011 WL 4542709 (Bankr. N.D. Oh. Sept.

28, 2011) (finding that non-moving party did not meet §1112(b)(2) burden because it failed to

make a showing that a proposed plan would be feasible); *In re Congoleum Corp*., 362 B.R. 198,

203 (Bankr. D.N.J. 2007) (the "purpose of the feasibility requirement ... is to prevent the

confirmation of visionary plans, but it does not demand irrefutable proof of success."); *In re*

*Prudential Energy Co*., 58 B.R. 857, 862–67 (Bankr. S.D.N.Y. 1986)) ("a plan based on

impractical or visionary expectations cannot be confirmed."); *Fidelity Deposit & Discount Bank*

*v. Domiano (In re Domiano)*, 442 B.R. 97, 107 (Bankr. M.D. Pa. 2010) (finding that failure to

produce evidence substantiating source of funding for a plan evidenced the nonmoving party's

failure to meet §1112(b)(2)(A) burden).

### b.    Treatment of Impaired Claimants

In addition to failing to substantiate their claims as to the availability of outside financing

upon which any Chapter 11 plan would be dependent, the Chapter 11 Trustee and Debtor failed

to provide any evidence that there is a likelihood that a plan could be confirmed within a

reasonable time. The Chapter 11 Trustee and Debtor concede that his unsecured creditors would

not be paid in full pursuant to any plan of reorganization and therefore any proposed plan would

necessarily require the acceptance of impaired claimants. Audio recording dated 5/28/2013 @

5:13:45-5:14:37 pm, Bky. No. 12-11063MDC. Madison holds a substantial unsecured claim

against the Debtor. At the Hearing, Madison's counsel advised this Court that Madison would

not support any plan submitted by the Debtor or the Chapter 11 Trustee in connection with the

Debtor.  No unsecured creditor filed an opposition to the Conversion Motions and, indeed, not

one appeared at the Hearing to express support for the Debtor's reorganization efforts.  As such,

it appears that absent support from Madison, any plan dependent upon the Debtor will be

confirmed only through the cramdown process provisions of 11 U.S.C. §1129(b).[13]  This

dynamic does not support a finding that there is a reasonable likelihood that a plan could be

confirmed within a reasonable time.

### c.    Good Faith

Finally, this Court finds that the Debtor's misconduct is a third reason why it is not

reasonably likely that a plan will be confirmed.  Based upon the Debtor's conduct that was

summarized by this Court in its Memorandum dated April 4, 2013, *In re Grasso*, Bky. No. 12-

11063, 2013 WL 1364088 (Bankr. E.D. Pa. Apr. 4, 2013) and his failure to account for

additional conduct that has come to light since the appointment of the Trustee, this Court

recognized that the Debtor's ability to comply with §1129(a)(3) is severely compromised.  *See,*

*e.g.*, *In re Cranney*, Bky. No. 13-11220, 2013 WL 2383594, *5 (Bankr. D. Mass. May 30, 2013)

(recognizing that "allegations of fraud" will cause "Few [to] credit the plan as having been

proposed in good faith.").

---

[13] Further, to be confirmed under these provisions, any proposed plan must be "fair and equitable."  11 U.S.C.
§1129(b)(1).  To be "fair and equitable" as to any dissenting class of creditors, the dissenting creditors must be
provided with the full value of their claims before any junior class may receive any distribution of estate assets.  *In
re Schriock Const., Inc.*, 167 B.R. 569, 577-78 (Bankr. D.N.D. 1994).  Because the Chapter 11 Trustee and Debtor
do not propose to pay his estate's unsecured creditors the value of their claims as of the effective date of any plan,
the Debtor may not retain pursuant to any nonconsensual plan his interest in any non-exempt, prepetition assets.  *In
re Lively*, App. No. 12-20277, 2013 WL 2347045, *2 (5th Cir. May 29, 2013) (concluding that exception to
absolute-priority rule for individual debtors provided by §1129(b)(2)(B)(ii) applies only to a debtor's retention of
postpetition assets made part of her estate pursuant to §1115); *In re Stephens*, 704 F.3d 1279, 1283-87 (10th Cir.
2013) (reaching identical result); *In re Maharaj*, 681 F.3d 558, 568 (4th Cir. 2012) (same).

**D.      Whether Conversion is in the Best Interests of the Estate and its Creditors**

This Court has determined that the Debtor's estate is presently administratively insolvent.

Due to the continuing accrual of administrative expenses coupled with the Debtor's unrelenting

intransigence, this Court found that any further attempts to reorganize the Debtor's estate would

only result in the deepening administrative insolvency of the Debtor's estate.  The estate and its

creditors would likely suffer additional injury if the Debtor's Chapter 11 case is further

prolonged.  *See, e.g., In re American Capital Equipment, Inc.*, 688 F.3d 145, 163 (3d Cir. 2012)

(finding that although unsecured creditors were unlikely to receive any distribution conversion

was in the best interest of the estate and its creditors because conversion would mitigate the

mounting liabilities of the debtor's estate).  As admitted by the Chapter 11 Trustee, her inability

to evaluate the feasibility of any proposed plan was the result of the Debtor's continued failure to

abide by his disclosure obligations.  The Chapter 11 Trustee testified that the Debtor had

promised to produce the requested document.  However, the Debtor did not submit any evidence

or offer any testimony whatsoever suggesting or in any way indicating that he will change his

course.  Absent conversion, this Court envisioned no means to put an end to the Debtor's

misconduct let alone minimize the further harm that was likely to result to his estate if his

charade of a reorganization was allowed to continue.  For these reasons, this Court found that

conversion was in the best interests of the Debtor's estate and creditors because conversion

would minimize the estate's expenses and would facilitate the orderly liquidation of its assets.

*See, e.g., In re Patel*, Bky. No. 11-73416, 2012 WL 3764523 (Bankr. W.D. Ark. Aug. 23, 2012)

(finding conversion to be warranted because of various issues relating to ownership of debtors'

assets could be adjudicated within a Chapter 7 case); *In re Domiano*, 442 B.R. 97, 109 (Bankr.

M.D. Pa. 2010) (recognizing that debtor's mismanagement warranted a finding that conversion

was in the best interest of creditors); *In re Ramreddy, Inc.*, 440 B.R. 103, 116 (Bankr. E.D. Pa.

2009) (finding conversion to be advisable as it would facilitate the repatriation of estate assets).

Dated:  July 11, 2013

_____

MAGDELINE D. COLEMAN
UNITED STATES BANKRUPTCY JUDGE