IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| In Re: JOSEPH GRASSO,<br>Debtor | CIVIL ACTION<br>NO. 14-1741 |

FILED
JUL 1 1 2014
MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

### MEMORANDUM OPINION

RUFE, J.                                                                                                          JULY 10, 2014

Paul Winterhalter appeals the Bankruptcy Court's order of January 17, 2014, denying his Second Interim and Final Application for Compensation and ordering disgorgement of all fees Winterhalter had previously received in connection with his representation of the Debtor and the Estate. Christine Shubert (the Chapter 7 Trustee) and Madison Capital Company (a creditor) oppose Winterhalter's appeal. For the reasons that follow, the Court will vacate the Order and remand the case for further proceedings.

I.    **Background**

On December 28, 2012, Winterhalter filed a Second Interim and Final Application for Compensation; Madison Capital objected on February 5, 2013; and the Trustee joined in Madison's objection on May 24, 2013. On September 24, 2013, the Bankruptcy Court (Judge Magdeline Coleman) held a hearing on the application. On January 17, 2014, the Bankruptcy Court entered a Memorandum Opinion and Order (the "Fee Opinion" and "Fee Order"), denying the application and ordering disgorgement of all fees previously paid to Winterhalter by the Debtor. The case before this Court is an appeal of the January 17, 2014 Order.

Although this is an appeal from the Fee Opinion and Order, it is impossible to understand those documents without taking into account a separate part of the case. On July 25, 2012, the

United States Trustee filed a Motion to Convert the case from a Chapter 11 (restructuring) to a Chapter 7 (liquidation); Madison Capital filed a similar motion on August 2, 2012. Following a hearing on the motion to convert, the Bankruptcy Court suggested that the movants instead seek appointment of a trustee. The Bankruptcy Court then held a hearing on the motion to appoint a trustee on October 15, 2012, and the motion was granted the following day, appointing Christine Shubert as Chapter 11 Trustee (she remained the Trustee when the case was eventually converted to Chapter 7). Grasso moved for reconsideration, which was granted in (very minor) part and denied for the most part by Memorandum Opinion and Order on April 4, 2013 (the "Trustee Opinion"). This proceeding is important because in entering the Fee Opinion and Order the Bankruptcy Court relied heavily on the factual findings from the Trustee Opinion, which arose from a proceeding where Winterhalter was not a party, although he was the Debtor Joseph Grasso's attorney.

Grasso owns partial or entire interests in several LLCs and Limited Partnerships. One of these entities is called 15th and Sansom, L.P. ("the Sansom Partnership"), which was formed to hold real estate located at that address ("the Sansom Property"). According to the Trustee Opinion, the Sansom Partnership sold the Sansom Property and used either the proceeds of this sale or $500,000 in cash from one of Grasso's brother's companies to purchase a claim on the Grasso Estate held by the Wilmington Savings Fund Society ("WSFS").[1] Also according to the Trustee Opinion, although on paper it was the Sansom Partnership that purchased this claim, in reality the Sansom Partnership is an alter ego of Grasso. Therefore, any money that came into the

---

[1] At one point in the Trustee Opinion, the Bankruptcy Court found that "the Debtor caused the diversion of at least $500,000.00 of the[] proceeds [of the sale of the Sansom Property] by orchestrating the purchase of the WSFS Claim." *In re Grasso*, 490 B.R. 500, 508 (Bankr. E.D. Pa. 2013). Two paragraphs later, the Bankruptcy Court declared that "evidence demonstrated that the purchase of WSFS's Claim was paid via a $500,000.00 wire transfer made on May 24, 2012 from [Grasso's brother's company] to WSFS." *Id.* at 509. The Bankruptcy Court did not reach a definitive conclusion about the source of the $500,000 paid for the WSFS claim.

2

Partnership should have accrued to the Bankruptcy Estate, and Grasso used Estate funds to purchase the WSFS claim, prejudicing other creditors who had valid claims on Estate property.

In the Fee Opinion, the Bankruptcy Court took judicial notice of the factual findings from the Trustee Opinion and treated them as "law of the case." The Bankruptcy Court then found that Winterhalter represented Grasso in his purchase of the WSFS claim. It also found that Grasso had testified untruthfully at the October 15, 2012, hearing and that Winterhalter failed to correct the untruthful testimony. The Fee Opinion concluded that: Winterhalter's involvement in the WSFS claim purchase rendered him not "disinterested" and therefore not entitled to fees under 11 U.S.C. § 328(c); Winterhalter, by representing both Grasso individually and Grasso's bankruptcy estate in connection with the WSFS claim purchase, represented an interest adverse to the Estate simultaneously with his representation of the Estate; Winterhalter's involvement in the WSFS claim purchase breached his fiduciary obligations to the Estate; and Winterhalter's involvement in the WSFS claim purchase breached his ethical obligations as a lawyer. In light of these perceived transgressions, the Bankruptcy Court denied the fee application and ordered disgorgement.

## II.    Standard of Review

In this case, the ultimate decision whether to award fees was committed to the Bankruptcy Court's discretion, but the Bankruptcy Court's determination turned on certain findings of fact and conclusions of law. Because district courts sit as appellate tribunals over orders issued in bankruptcy proceedings, they review bankruptcy courts' factual findings for clear error and legal conclusions *de novo*, while matters committed to the Bankruptcy Courts' discretion are reviewed for abuse thereof.[2] "'Abuse of discretion' is a phrase which sounds worse

---

[2] *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1223 (3d Cir. 1995).

3

than it really is. All it need mean is that, when judicial action is taken in a discretionary matter, such action cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors."[3] And a court abuses its discretion when it commits an error of law.[4]

### III. Applicable Law

Section 330(a)(1) of the Bankruptcy Code provides that a court may award to a professional person reasonable compensation "[a]fter notice to the parties in interest and the United States Trustee and a hearing."[5] The Third Circuit has held that when a Bankruptcy Court contemplates disallowance of fees, the Code, the Bankruptcy Rules, "and perhaps even the dictates of due process, mandate[] that the court allow the fee applicant an opportunity, should it be requested, to present evidence or argument that the fee application meets the prerequisites for compensation."[6] Critically, the Third Circuit specified that "[t]o make the hearing meaningful, the court should *first* apprise the applicant of the particular questions and objections it harbors."[7] The reason for this holding is that,

> When the bankruptcy court clothed in its administrative robe fulfills its duty to review a fee application without the applicant being present, the applicant cannot possibly know what evidence or legal theories the court is contemplating when it decides to disallow certain fees. Unless the applicant is afforded an opportunity to rebut or contest the court's conclusions, the applicant would unfairly and

---

[3] *Perichak v. Int'l Union of Elec. Radio & Mach. Workers*, 715 F.2d 78, 86 (3d Cir. 1983) (quoting *In re Josephson*, 218 F.2d 174, 182 (1st Cir.1954)).

[4] *United States v. Jake*, 281 F.3d 123, 128 n.5 (3d Cir. 2002).

[5] 11 U.S.C. § 330(a)(1).

[6] *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 846 (3d Cir. 1994) (citation omitted).

[7] *Id.* (emphasis added).

4

undesirably be deprived of the chance to respond to and assuage the court's questions and concerns.[8]

When a Bankruptcy Court orders a hearing on a fee application, in addition to considering the fee application itself, "the court should carefully consider relevant, competent evidence submitted with the fee application, provided as a supplement to the fee application, or presented at a hearing."[9] What evidence is "relevant" and "competent" will be determined by applying ordinary evidentiary rules, because with limited supplementation in the Bankruptcy Rules, "[t]he Federal Rules of Evidence . . . apply in cases under the Code."[10]

As noted above, the Bankruptcy Court here made findings of fact by liberal use of judicial notice and law of the case. Judicial notice of adjudicative facts—that is, facts that "relate to the parties . . . who did what, where, when, how, and with what motive or intent"[11]—is governed by Federal Rule of Evidence 201. Rule 201(b) limits judicial notice and provides that a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[12] Courts may take judicial notice of public records and prior proceedings to establish the existence of those materials, but not for the truth of the facts asserted in them.[13] Law of the case "limits

---

[8] *Id.* at 847.

[9] *Id.* at 854.

[10] Fed. R. Bankr. P. 9017.

[11] Kenneth Culp Davis, 2 Administrative Law Treatise 353 (quoted in Fed. R. Evid. 201, 1972 Advisory Committee Note to Subdivision (a)).

[12] Fed. R. Evid. 201(b).

[13] *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004) (abrogated in part on other grounds by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)) ("While a prior judicial opinion constitutes a public record of which a court may take judicial notice, it may do so on a motion to dismiss only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion."); *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.*, 181 F.3d 410, 427 n.7 (3d Cir. 1999) ("Recently, courts and commentators have paid more attention to the

5

relitigation of an issue once it has been decided in an earlier stage of the same litigation. [Courts] apply the doctrine with the intent that it will promote finality, consistency, and judicial economy."[14] However, when a new party is added to a proceeding, a prior determination does not constitute law of the case as to the new party because "'[t]he law of the case doctrine should not be read so rigidly that it precludes a party from raising an argument that it had no prior opportunity to raise.'"[15]

### IV. Discussion

As a threshold matter, the Bankruptcy Court did not follow the instruction in *Busy Beaver* that courts should, before denying a fee application, "apprise the applicant of the particular questions and objections it harbors."[16] However, this may not have been in itself erroneous because the Trustee and Madison Capital had lodged objections, and therefore Winterhalter had some notice that he would need to justify his billing. Where the Bankruptcy Court went wrong was to apply factual findings from a hearing that did not implicate Winterhalter's fees in determining whether Winterhalter was entitled to fees. This practice prevented the fee hearing from being meaningful and requires a remand.

---

distinction between judicially noticing the existence of prior proceedings and judicially noticing the truth of the facts averred in those proceedings. . . . It has been suggested that the appropriate analogy is the hearsay rule which allows an out-of-court statement to be admitted into evidence for purposes other than establishing the truth of the statement."); *In re New Century TRS Holdings, Inc.*, 502 B.R. 416, 423 (Bankr. D. Del. 2013) ("I will take judicial notice of the documents filed in the Clerk of the Court's Office, Volusia County, Florida . . . to the extent the documents show that filings were made in Volusia County, Florida, but not for the truth of the averments within those documents."); Kenneth Culp Davis, *Judicial Notice*, 55 Colum. L. Rev. 945, 983 (1955) ("The fundamental principle is that parties should have opportunity to meet in the appropriate fashion all facts that influence the disposition of the case. What is the appropriate fashion depends upon three main variables—how far the facts are from the center of the controversy between the parties, the extent to which the facts are adjudicative facts about the parties or legislative facts of a general character, and the degree of certainty or doubt about the facts."); *accord* Bankr. Evid. Manual § 201:5 (2013 ed.).

[14] *Hamilton v. Leavy*, 322 F.3d 776, 786–87 (3d Cir. 2003) (internal quotation marks and citations omitted).

[15] *Id.* at 787 (alteration in original) (quoting *United States v. Dexter*, 165 F.3d 1120, 1124 (7th Cir. 1999)).

[16] *Busy Beaver*, 19 F.3d at 846.

As stated above, the Bankruptcy Court reached four conclusions that led it to deny the fee petition and order disgorgement: Winterhalter's involvement in the WSFS claim purchase rendered him not "disinterested" and therefore not entitled to fees under 11 U.S.C. § 328(c); Winterhalter, by representing Grasso individually and Grasso's bankruptcy estate in connection with the WSFS claim purchase, represented an interest adverse to the Estate simultaneously with his representation of the Estate; Winterhalter's involvement in the WSFS claim purchase breached his fiduciary obligations to the Estate; and Winterhalter's involvement in the WSFS claim purchase breached his ethical obligations as a lawyer. Each of these conclusions rests at least in part on factual predicates that were all developed in connection with the Bankruptcy Court's adjudication of the motion to appoint a trustee. Winterhalter was not a party to that proceeding, and therefore law of the case is unavailable against him. And, to take just one example, the Bankruptcy Court plainly erred in taking judicial notice of "docket entries and orders"[17] in order to conclude as against Winterhalter that "the Debtor was in fact the real purchaser of the WSFS claim."[18] The only appropriate purpose for taking judicial notice of docket entries and orders is for the fact that the entries and orders were actually made, not for the truth of matters asserted in them.

It may seem counterproductive to Bankruptcy Court, which is, after all, a court in equity, to require it in a fee hearing to set aside findings of fact that it has already made.[19] But the adversarial system of adjudicating facts sometimes requires judges to find facts with respect to certain litigants only. Litigants have different incentives in presenting facts to courts. To take one

---

[17] *In re Grasso*, 506 B.R. 626, 635 n.11 (Bankr. E.D. Pa. 2014).

[18] *Id.* at 8.

[19] The Bankruptcy Court stated as much at the hearing on the fee application. Hr'g on Objection to Second Interim and Final Fee Application Tr. at 85:4–10, *In re Grasso*, No. 12-bk-11063 (Bkr. E.D. Pa. Sept. 24, 2013).

example from this case, the Bankruptcy Court found against Grasso that Grasso was the true purchaser of the WSFS claim notwithstanding the fact that a limited partnership (in which Grasso had a one-third interest) was the purchaser on paper. Grasso did not appeal this factual finding; the Bankruptcy Court therefore treated it as law of the case against Winterhalter. But Grasso could have had any number of reasons not to have appealed the finding. Perhaps the finding was correct; perhaps the issue was trivial to Grasso in the context of the whole case; or perhaps an appeal on this issue would have been too expensive for the Bankruptcy Estate. Once the factual finding was applied to Winterhalter, however, Winterhalter had a strong incentive to contest it (because it led to the Fee Order). And if Winterhalter had been afforded the opportunity to contest the finding, he would have made significant headway in convincing the court to reconsider it because, as appears from the Trustee Opinion, the finding may well have been made in violation of the Third Circuit's instructions on when it is appropriate for bankruptcy courts to disregard corporate forms.[20] Allowing Grasso's strategic decision not to appeal a potentially erroneous decision to have profound collateral consequences against Winterhalter is unfair and not permitted by law.

The Bankruptcy Court's misapplication of the doctrines of law of the case and judicial notice require that judgment be vacated and the case remanded for further proceedings. These errors were not harmless because they provide the foundation for the entire factual predicate of the essential holdings of the Fee Opinion. Moreover, even if law of the case and judicial notice were applied appropriately, several of the Bankruptcy Court's conclusions of law are potentially

---

[20] *In re Owens Corning*, 419 F.3d 195, 211–12 (3d Cir. 2005) ("In our Court what must be proven (absent consent) concerning the entities for whom substantive consolidation is sought is that (i) prepetition they disregarded separateness so significantly their creditors relied on the breakdown of entity borders and treated them as one legal entity, or (ii) postpetition their assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors." (footnotes omitted)).

incorrect, and at the very least could have been challenged by Winterhalter had he received the opportunity to do so.

For example, the Bankruptcy Court cites Winterhalter's apparent breach of professional obligations as an independent reason to deny his fee application. But the case cited in support of this proposition[21] only considers a lawyer's professionalism in the context of compensation insofar as his professionalism affected the value provided to the Estate he represented, under § 330(a)(1). It is not clear if a lawyer's unprofessional behavior is, in itself, a basis for denying or abridging his fee application. Similarly, the fact that Winterhalter may have violated the Pennsylvania Rules of Professional Conduct, another factor cited in the Bankruptcy Court's opinion, may not alone be a basis for denying compensation.

The Bankruptcy Court did determine that Winterhalter provided no benefit to the Estate—an appropriate reason to deny compensation under § 330—but this conclusion appears removed from any lack of professionalism. Winterhalter's breach of his professional obligations, according to the Bankruptcy Court in its discussion of whether he provided a benefit to the Estate, consisted of his failure to correct misleading testimony given by Grasso regarding the WSFS claim purchase.[22] At oral argument in this Court, Winterhalter's attorney made a plausible argument that Winterhalter had in fact corrected Grasso's testimony, an argument that Winterhalter had no opportunity to make below.[23] And this lack of professionalism does not necessarily have anything to do with the actual value provided to the Estate, which is the relevant

---

[21] *In re APW Enclosure Systems, Inc.*, Bky. No. 06-11378, 2007 WL 3112414, *4 (Bankr. D. Del. Oct. 23, 2007).

[22] *In re Grasso*, 506 B.R. at 643-44.

[23] Oral Argument Tr., *In Re Grasso*, No. 14-cv-1741, ECF No. 16, at 23:21-26:2 (E.D. Pa. June 19, 2014). This Court expresses no opinion on whether Winterhalter's action met his ethical obligations, but at the very least, he should have been offered a meaningful opportunity to confront the serious criticism that the Bankruptcy Court leveled at him.

9

basis explicitly stated in § 330(a)(4)(A) on which a judge can justify denial or abridgement of a fee application.[24] The only justification the Bankruptcy Court gave for its finding that Winterhalter provided no net benefit to the Estate is that Winterhalter's behavior "contributed to the already antagonistic relationship between the Debtor and his creditors," which caused "every issue to be vigorously litigated which has in turn led to an explosion of administrative expenses."[25] But these findings are too vague for this Court to be able to determine whether or not they are clearly erroneous. Without, for example, an estimation of the cost of this litigation for the Estate or a more precise exposition of how Winterhalter's conduct created additional expenses, it is difficult to conclude that Winterhalter provided no net benefit. The lacking factual basis and debatable legal basis for the Bankruptcy Court's determination that Winterhalter provided no net benefit to the Estate indicate that Winterhalter should have been given the chance to demonstrate a net benefit.

Similarly, given the opportunity, Winterhalter may have successfully defended himself against the Bankruptcy Court's determination that Winterhalter should be denied payment for ceasing to remain "disinterested" and for "hold[ing] an interest adverse to the interest of the estate" under § 328(c).[26] Section 101(14) offers three definitions of "disinterested person," only one of which could render Winterhalter not disinterested: "[a person who] . . . does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest

---

[24] See § 330(a)(4)(A) (allowing judges to abridge or deny compensation to attorneys for "unnecessary duplication of services," and for "services that were not . . . reasonably likely to benefit the debtor's estate" or not "necessary to the administration of the case").

[25] In re Grasso, 506 B.R. at 639.

[26] 11 U.S.C. § 328(c).

10

in, the debtor. . . ."[27] The Third Circuit has read this provision to require an attorney's disqualification where there is an actual conflict of interest, and courts have the discretion to disqualify counsel if there is a potential conflict of interest and the appearance of conflict.[28] Though this discretion is broad, a mere "appearance of conflict," by itself, is not sufficient for disqualification.[29]

The Bankruptcy Court's finding that Winterhalter was not "disinterested" is predicated upon its finding that Winterhalter represented Grasso in the purchase of the WSFS claim.[30] While bankruptcy courts are given wide discretion in determining the existence of a potential material conflict,[31] Winterhalter, if given the opportunity, may have been able to satisfy the Bankruptcy Court that he was acting *in* the interest of the Estate by facilitating the WSFS claim purchase and that there was neither an actual conflict nor potential for it. In fact, the Chapter 11 Trustee determined that "although the transaction should have been disclosed more thoroughly, it was in the best interest of the estate" for the Sansom Partnership to purchase the WSFS claim.[32] Even if the Bankruptcy Court was dissatisfied with Winterhalter's failure to reveal the pending transaction and wished to deny compensation for that reason, it does not follow that he ceased to remain a "disinterested person." Winterhalter is owed an opportunity to show that these conclusions of law, which may follow him in his professional career, were in error.

---

[27] 11 U.S.C. § 101(14)(C).

[28] *In re Marvel Entm't Grp.*, 140 F.3d 463, 476 (3d Cir. 1998).

[29] *Id.*

[30] *In re Grasso*, 506 B.R. at 636-37.

[31] *See, e.g., In re BH & P, Inc.*, 949 F.2d 1300, 1316-17 (3d Cir. 1991); *In re Martin*, 817 F.2d 175, 182 (1st Cir. 1987).

[32] Status Rpt., 12-bk-11063, Doc. 454 at 9.

11

Similarly, the Bankruptcy Court waded into uncertain legal waters when it concluded that Winterhalter's representation of the Debtor in connection with the WSFS claim purchase unquestionably would have constituted an actual conflict of interest if the Debtor were a corporation and "[t]he fact that a debtor is an individual does not obviate the distinction between representation of a debtor personally and representation of a debtor's bankruptcy estate .... Nor does the fact that a debtor is an individual obviate the potential for conflict that arises from an attorney's dual representation of both."[33] It is unclear what exactly the Bankruptcy Court meant by adverting to the potential for conflict, but Winterhalter's characterization of the holding is plausible: the same rules regarding disqualifying conflicts of interest apply in corporate and individual Chapter 11 cases. Whether the Bankruptcy Court was correct in such a holding appears to be a question of first impression nationwide, and Winterhalter's counsel has raised plausible reasons to doubt the Bankruptcy Court.[34] This Court expresses no opinion on the merits of the Bankruptcy Court's determination in this respect, but Winterhalter should have been given the opportunity to litigate this novel issue of bankruptcy law and its application to his situation, especially considering the dire professional consequences the Bankruptcy Court manufactured.

For all these reasons, the Bankruptcy Court abused its discretion in denying Winterhalter's Second Interim and Final Fee Application. The Bankruptcy Court's failure to adhere to the Third Circuit's instructions in *Busy Beaver* to apprise Winterhalter of the concerns it harbored in connection with the fee application, while not necessarily reversible error *per se*, resulted in an unfair lack of notice to Winterhalter. The unfairness was aggravated by the unusual manner in which the Bankruptcy Court received evidence in adjudicating the application. The

---

[33] *In re Grasso*, 506 B.R. at 637.

[34] Oral Argument Tr., *In Re Grasso*, No. 14-cv-1741, ECF No. 16, at 19:20–21:6 (E.D. Pa. June 19, 2014).

Bankruptcy Court did commit reversible legal error in taking judicial notice of docket entries for the truth of matters asserted therein and in applying the law of the case doctrine to prevent Winterhalter from challenging the factual basis for the Bankruptcy Court's ultimate determination. Finally, the short shrift the Bankruptcy Court gave to Winterhalter's right to be heard may have resulted in erroneous conclusions of substantive law; at the very least, Winterhalter's position on the factual and legal predicates of the Fee Opinion deserves a fuller airing.

### V.    Remand

For the reasons stated above, the factual record was insufficient for the Bankruptcy Court to reach the conclusions it did. Therefore, this Court will vacate the Fee Order and remand the case for further proceedings. If the Bankruptcy Court determines that another hearing is necessary to determine whether Winterhalter is entitled to fees (and another hearing will be necessary if the Bankruptcy Court contemplates a denial of fees), the Bankruptcy Court shall issue a statement in whatever form it deems appropriate outlining "the particular questions and objections it harbors"[35] before it holds a meaningful hearing on the fee application. In adjudicating the fee application the Bankruptcy Court will receive evidence in accordance with the Federal Rules of Evidence, and it will make factual findings and legal determinations in accordance with the relevant governing procedural and substantive law.

### VI.    Conclusion

The Fee Order must be vacated, and the case will be remanded. This Court intimates no opinion on whether Winterhalter must be compensated or not, but whatever the determination, it must be made in accordance with applicable law. An appropriate Order follows.

---

[35] *Busy Beaver*, 19 F.3d at 846.