UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 7 |
| JOSEPH GRASSO, | : | |
| DEBTOR. | : | BANKRUPTCY NO. 12-11063-MDC |

# **MEMORANDUM**

BY: MAGDELINE D. COLEMAN, UNITED STATES BANKRUPTCY JUDGE

Before this Court is the Application for Administrative Expenses dated April 2, 2013 (the "Application"), filed by Madison Capital Company, LLC ("Madison"). In response, Christine C. Shubert (the "Trustee"), the then Chapter 11 Trustee and now present Chapter 7 Trustee of the estate of Joseph Grasso (the "Debtor"), filed an Objection dated April 17, 2013 (the "Trustee's Objection"). In addition, the Law Offices of Paul J. Winterhalter, P.C., on its own behalf and not in its capacity as the former representative of the Debtor, filed an Objection dated May 6, 2013 (the "PJW Objection").

In support of its Application, Madison subsequently filed a Supplemental Brief dated June 12, 2013 [Docket No. 653] (the "First Supplement"), and a Second Supplemental Brief dated July 17, 2013 [Docket No. 752] (the "Second Supplement").

After being rescheduled several times, a hearing on the Application was held on August 28, 2013 (the "Hearing"). After considering the parties' arguments, this Court took the matter under advisement. Upon sufficient consideration of the issues, this Court will grant the Application in part, and deny it in part.

## I.    REIMBURSEMENT OF FEES UNDER §503(b)(3)(D)

Typically, creditors are not entitled to reimbursement of their fees and costs incurred in connection with a debtor's bankruptcy. However, a bankruptcy court may award reimbursement of a creditor's fees and costs if the creditor made a "substantial contribution" to the administration of the case. In relevant part, §503(b)(3)(D) provides:

> After notice and hearing, there shall be allowed administrative expense, other than claims allowed under section 502(f) of this title, including- …
> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by- …
> (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title

11 U.S.C. §503(b)(3)(D).

In determining whether a creditor is entitled to reimbursement, bankruptcy courts recite the generic prescription that that proof of "substantial contribution" requires an applicant's efforts to result in an "actual and demonstrable benefit to the bankruptcy estate." *Lebron v. Mechem Fin. Inc*., 27 F.3d 937, 944 (3d Cir. 1994); *In re Spansion Inc*., Bky. No. 09-10690, 2014 WL 1928632 (Bankr. D. Del. May 14, 2014); *In re Philadelphia Newspapers, LLC*, 445 B.R. 450, 463 (Bankr. E.D. Pa. 2010). However, the mere fact that a creditor's self-interested conduct has the effect of benefitting other creditors is not sufficient to establish the creditor's entitlement to reimbursement. *In re Tropicana Entertainment, LLC*, 498 Fed. Appx. 150 (3d Cir. 2012). Something more is required.

The adversarial nature of bankruptcy proceedings presumes the participation of creditors will be driven by their self-interest and not the expectation of payment. To the extent they are motivated to action, a bankrupt's unsecured creditors will, in the furtherance of their own interests, undertake efforts that will, more often than not, benefit the greater good of the estate. Holders of significant claims against the estate should not need additional incentives to advance the bankruptcy process. *In re Lehman Bros. Holdings Inc.*, 508 B.R. 283, 294 (S.D.N.Y. 2014).

Recognizing this dynamic, the Third Circuit has imposed a limiting principle that requires a creditor's efforts, while not animated by purely altruistic motives, should have "transcended self-protection." *Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 944 (3d Cir. 1994); *see also Lehman Bros.*, 508 B.R. at 294 (classifying §503(b)(3)(D) as providing payment for "extraordinary work to benefit the estate, above and beyond normal committee duties…"). Not surprisingly, bankruptcy courts have struggled to determine what conduct passes this elusive threshold. To clarify the inquiry, bankruptcy courts have

2

identified four factors: (1) whether the services were provided to benefit the estate generally or the party specifically; (2) whether services conferred a benefit upon the estate; (3) whether the services were duplicative of other parties' efforts; and (4) whether the services would have been provided absent an expectation of reimbursement. *In re Spansion Inc.*, Bky. No. 09-10690, 2014 WL 1928632, *2 (Bankr. D. Del. May 14, 2014).

As discussed below, on its face, the inquiry in this case is easily answered in the affirmative. This Court has no difficulty concluding that Madison's efforts resulted in the accrual of a concrete benefit to the estate by alerting this Court to the Debtor's diversion of estate assets. As this Court previously noted:

> Like a sweater come undone by the pulling of one loose string, the Debtor's legitimacy as a debtor-in-possession quickly began to unravel as Madison and his other creditors began to investigate...

*In re Grasso*, 490 B.R. 500, 504 (Bankr. E.D. Pa. 2013). Undoubtedly, Madison's efforts benefitted the estate.

**II.    MADISON'S §503(b)(3)(D) CLAIM**

Pursuant to the Application, Madison seeks reimbursement of attorneys' fees in the amount of $131,379.50 and costs in the amount of $5,276.62.[1] Of this amount, Madison allocates its fees as follows:

1. $21,809.20 for 60.25 hours of attorneys' fees incurred in connection with Madison's prosecution of its Motion for 2004 Examination dated March 29, 2012 (the "2004 Motion").

2. $26,414.13 for 70.25 hours of attorneys' fees incurred in connection with Madison's prosecution of the Motion to Convert dated July 23, 2012 (the "First Conversion Motion").

---

[1] In Madison's First Supplement, Madison attributed expenses of $4,282.34 to its prosecution of the 2004 Motion, the First Conversion Motion and the Trustee Motion. In the Second Supplement, Madison attributed expenses of $994.28 to its prosecution of the Second Conversion Motion. Madison attributed no expenses to its prosecution of the Katz Objection.

3

3. $26,601.60 for 75.4 hours of attorneys' fees incurred in connection with Madison's prosecution of the Motion to Appoint Trustee dated September 14, 2012 (the "Trustee Motion").

4. $25,487.13 for 76 hours of attorneys' fees incurred in connection with Madison's prosecution of the Objection to Claim Number 26 dated July 16, 2012 (the "Katz Objection").

5. $2,495.18 for 8.1 hours of attorneys' fees incurred in connection with Madison's prosecution of the Objection to Application for Compensation dated February 5, 2013 (the "PJW Objection").

6. $28,572.26 for 76.30 hours of attorneys' fees incurred in connection with Madison's prosecution of the Motion to Convert Case to Chapter 7 dated March 25, 2013 (the "Second Conversion Motion").

**The 2004 Motion**

This Court has previously discussed the intractable nature of this Debtor. *See, e.g., In re Grasso*, 490 B.R. 500, 525 (Bankr. E.D. Pa. 2013) ("the Debtor exhibited general intransigence with regard to disclosing to this Court and his Creditors the nature of his financial affairs."). His unwillingness to provide full and frank disclosure has been a hallmark of this case. One of the first skirmishes relating to this issue was fought by Madison in connection with its 2004 Motion. By filing the 2004 Motion, Madison sought information from the Debtor relating to his various business interests and "the Debtor's claim that he holds the majority of his property as entireties property." *Grasso*, 490 B.R. at 514.

In response to the 2004 Motion, Madison obtained organizational documents regarding some, but not all, of the Debtor's partnership entities. These documents included various partnership K-1 forms that were later submitted to this Court. The inconsistencies between the Debtor's K-1s and the Debtor's bankruptcy schedules were among the primary reasons for this Court's decision to appoint a Chapter 11 Trustee. *Grasso*, 490 B.R. at 514-18 (discussing the K-1s and their implications).

The activities of Madison relating to the 2004 Motion are well within scope of compensable

4

activities. The Third Circuit has expressly recognized that "it will be a substantial contribution if the person involved uncovers facts that would lead to a denial of confirmation, such as fraud in connection with the case." *Lebron*, 27 F.3d at 945. After reviewing Madison's time entries it claims to relate to its prosecution of the 2004 Motion, this Court concludes that Madison's prosecution of the 2004 Motion uncovered facts that, in addition to revealing the primary source of funding for the payment of claims, would have led to a denial of plan confirmation and may still yet lead to a finding of fraud in this case. On this basis and finding Madison's time entries relating to its prosecution of the 2004 Motion to be reasonable, this Court will permit reimbursement of Madison's 2004 Motion fees.

**The First Conversion Motion and the Trustee Motion**

In addition to Madison's fees and costs incurred in connection with the 2004 Motion, this Court finds that Madison's fees and costs incurred in connection with the First Conversion Motion and the Trustee Motion to be compensable. Because this Court's consideration of both motions culminated in its decision to appoint a Chapter 11 Trustee, this Court will consider both in tandem. With regard to the First Conversion Motion and consistent with the Third Circuit's *dictum* in *Lebron*, Madison's fees and costs are compensable because Madison's efforts resulted in the discovery of the Debtor's diversion of estate assets to purchase the Claim dated March 15, 2012 (the "WSFS Claim"). As this Court previously stated, the discovery of the Debtor's purchase of the WSFS Claim was "[o]f primary significance to this Court's decision to issue the Trustee Order…" *Grasso*, 490 B.R. at 507. With regard to the Trustee Motion, Madison's fees and costs are compensable because Madison's decision to file and to prosecute the Trustee Motion were undertaken at the suggestion of this Court.[2] Having reviewed Madison's time

---

[2] As this Court recognized at the September 5, 2012 hearing:

> Well, I was waiting to when someone's going to ask for a trustee. Because, to be perfectly honest, I was going to *sua sponte* do it on hearing and notice. I have some serious concerns about what's going on in this estate. Very serious. And that's what I wanted to know is whether I could or couldn't do it. Yes, I can, unless somebody would care to file a motion asking for such an appointment…

Transcript 9/5/2012, 5:17-25; 23:7-20. And later elaborated upon at the September 7, 2012, hearing:

> And at the continued hearing on Wednesday, it was Wednesday, there was some testimony and some documents that were entered into evidence that gave the Court great concern about whether

5

entries relating to both tasks and confirmed their reasonableness, this Court can determine that the services rendered are worthy of reimbursement pursuant to §503(b)(3)(D).

**The Katz Objection and the PJW Objection**

With regard to the reimbursement of fees incurred in connection with the Katz Objection and the PJW Objection, this Court finds that those fees are not compensable. The first, second and fourth factors identified in *Spansion* weigh strongly against an award of fees incurred as a result of Madison's decision to prosecute the Katz Objection and the PJW Objection. Madison was seeking repayment from a potentially limited pool of assets. To the extent rival claimants may be eliminated, Madison would have likely increased the relative size of its distributions. Therefore, Madison's self-interest justified its decision to challenge competing claims. The services relating to the Katz Objection and the PJW Objection were not performed for the purpose of augmenting the estate but were performed to limit the amount of competing claims.

With regard to the third factor, this Court acknowledges that Madison's efforts were not necessarily duplicative of the efforts of other parties. This Court has repeatedly acknowledged that Madison was among the primary, if not preeminent, protagonist in many of the various skirmishes that have been fought for the benefit of the Debtor's creditors. However, this Court must acknowledge that Madison is one of the Debtor's largest unsecured creditors. Madison states that it is the holder of an unsecured claim against the Debtor in the amount of $7,865,528.80 relating to an unpaid Promissory Note

---

> there was a need to appoint a Chapter 11 Trustee, and the Court was considering doing it on a *sua sponte* basis, which I don't necessarily like to do. My role is to judge. At that point, Madison Capital's counsel, Mr. Jones, said that in fact his client would file such a motion…
>
> …
>
> I don't want to have to do that. As I said, my job is not to patrol or oversee what people spend their money on. I expect that when they file bankruptcy, they know what the rules are or that counsel is going to advise them of the rules, tell them what that means, and that I expect them to comply with what the rules are. I don't like doing this. And I think it's probably about the fifth time that I have said it. So I am going to say, *I am going to depend on the creditors*, the interested parties, the U.S. Trustee to file what is necessary to make sure that this bankruptcy is like any other bankruptcy filed in this Court, that the Debtor follows the rules, and that this goes smoothly, and that the Court will not have to take actions *sua sponte*.

Transcript 9/7/2012, 5:17-25; 23:7-20 (emphasis added).

dated October 12, 2007, evidencing a loan in the original principal amount of $3,000,000.00 (the "WSC Loan") from Madison to WSC Warminster Plaza Mezz Associates LP ("WSC"). In addition to obtaining from WSC a first-priority security interest in certain collateral, Madison obtained from the Debtor a guarantee of payment of the WSC Loan pursuant to a Payment Guaranty dated October 12, 2007. Faced with the prospect of the Debtor obtaining a complete discharge of this debt, this Court is not surprised that Madison decided to vigorously participate in the administration of the Debtor's estate. Because of the size of Madison's claim and the fact that the other factors weigh strongly against an award of fees, this Court finds that on balance Madison is not entitled to compensation for its fees and costs incurred in connection with the Katz Objection and the PJW Objection.

**The Second Conversion Motion**

With regard to the reimbursement of fees incurred in connection with the Second Conversion Motion, this Court also finds that those fees are not compensable. Of the four *Spansion* factors, this Court finds that only the third factor weighs in favor of Madison. Madison's efforts were not duplicative. This Court doubts another party would have come forward to prosecute the Second Conversion Motion.

As evidenced by this Court's decision to convert this bankruptcy to chapter 7, the estate was benefitted by conversion. By preventing the further dissipation of estate assets, Madison only conferred a benefit on the estate to the extent it stopped it additional losses. However, this Court is reluctant to reimburse fees for actions that do not result in a net benefit to the estate. As a result, this Court finds that the second factor is, in this case, a nonfactor.

Ultimately, this Court finds that Madison's entitlement to reimbursement of its fees and costs incurred in connection to the Second Conversion Motion is dependent upon the first and fourth factors. As this Court previously discussed, the size of Madison's unsecured claim provided ample justification for this Court to infer that the services were provided for Madison specifically and the services would have been provided absent an expectation of reimbursement. For this reason, this Court finds that Madison's efforts in connection with the Second Conversion Motion were not sufficiently transcendent so as to justify reimbursement.

### III. CONCLUSION

For the reasons stated, this Court will grant the Application as to Madison's fees and costs incurred in connection with its prosecution of the 2004 Motion, the First Conversion Motion, and the Trustee Motion. After reviewing the record and based upon this Court's experience garnered during the course of the administration of the Debtor's estate, this Court is convinced that Madison's work in connection with these proceedings provided an exceptional benefit to the Debtor's estate.

An Order consistent with this Memorandum will be entered.

Dated: October 10, 2014

MAGDELINE D. COLEMAN
UNITED STATES BANKRUPTCY JUDGE

Joseph Grasso
649 Dodds Lane
Gladwyn, PA  19035

Steven D. Usdin, Esquire
Harry J. Giacometti, Esquire
Flaster/Greenberg, P.C.
Four Penn Center, 2nd Floor
1600 John F. Kennedy Boulevard
Philadelphia, PA  19103

Christine C. Shubert, Esquire
10 Teaberry Drive
Medford, NJ  08055

Dave P. Adams, Esquire
Kevin P. Callahan, Esquire
George M. Conway, Esquire
Hugh J. Ward, Esquire
United States Trustee
833 Chestnut Street, Suite 500
Philadelphia, PA  19107

Jeffrey Kurtzman, Esquire
Klehr Harrison Harvey Branzburg LLP
1835 Market Street, Suite 1400
Philadelphia, PA  19103

Roger G. Jones, Esquire
Austin L. McMullen, Esquire
Bradley Arant Boult Cummings
1600 Division Street, Suite 700
Nashville, TN  37203

Robert D. Cheifetz, Esquire
Sperling & Slater PC
55 W. Monroe Street, Suite 2300
Chicago, IL  60603

Dimitri L. Karapelou, Esquire
Law Offices of Dimitri L. Karapelou, LLC
1600 Market Street, 25th Floor
Philadelphia, PA  19103

Aaron S. Applebaum, Esquire
Gary D. Bressler, Esquire
McElroy Deutsch Mulvaney & Carpenter LLP
1617 John F. Kennedy Boulevard, Suite 1500
Philadelphia, PA  19103

Jeffrey Baddeley, Esquire
1660 W. 2nd Street, Suite 1100
Cleveland, OH  44113-1448

Monique B. DiSabatino, Esquire
Saul Ewing LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA  19102

Brian M. Kile, Esquire
Grenen & Birsie, P.C.
One Gateway Center, Ninth Floor
420 Fort Duquesne Boulevard
Pittsburgh, PA  15222

Paul J. Winterhalter, Esquire
Law Offices of Paul J. Winterhalter, P.C.
1717 Arch Street, Suite 4110
Philadelphia, PA  19103

Lawrence G. McMichael, Esquire
Dilworth Paxson LLP
1500 Market Street, Suite 3500E
Philadelphia, PA 19102

Courtroom Deputy
Eileen Godfrey