UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 7 |
| JOSEPH GRASSO, | : | |
| DEBTOR. | : | BANKRUPTCY NO. 12-11063-MDC |

| | | |
|---|---|---|
| CHRISTINE C. SHUBERT, CHAPTER 7 TRUSTEE FOR THE ESTATE OF JOSEPH GRASSO, | : | |
| PLAINTIFF, | : | |
| V. | : | ADVERSARY NO. 13-00479-MDC |
| JOSEPH GRASSO, | : | |
| DEFENDANT. | : | |

| | | |
|---|---|---|
| ROBERT A. DEANGELIS, UNITED STATES TRUSTEE, | : | |
| PLAINTIFF, | : | |
| V. | : | ADVERSARY NO. 13-00477-MDC |
| JOSEPH GRASSO, | : | |
| DEFENDANT. | : | |

| | | |
|---|---|---|
| MADISON CAPITAL COMPANY, LLC, | : | |
| PLAINTIFF, | : | |
| V. | : | ADVERSARY NO. 13-00438-MDC |
| JOSEPH GRASSO, | : | |
| DEFENDANT. | : | |

| | | |
|---|---|---|
| MARSHALL J. KATZ, | : | |
| PLAINTIFF, | : | |
| V. | : | ADVERSARY NO. 13-00481-MDC |
| JOSEPH GRASSO, | : | |
| DEFENDANT. | : | |

**MEMORANDUM GRANTING MOTIONS FOR SUMMARY JUDGMENT**

Before the Court for consideration are (1) a Motion for Summary Judgment filed by Marshall J. Katz (the "Katz Motion"),[1] and (2) a Joint Motion for Summary Judgment filed by Madison Capital Company, LLC and Christine C. Shubert, Chapter 7 Trustee for the Estate of Joseph Grasso (the "Joint Motion," collectively with the Katz Motion, the "Motions")[2] seeking entry of an Order denying the Debtor, Joseph Grasso (the "Debtor") a discharge pursuant to 11 U.S.C. §727. The parties contend that based upon the law of the case doctrine and issue preclusion the Court is required to grant the Motions. After review of the Motions and consideration of the parties' arguments at the Hearing (the "Hearing") scheduled by this Court pursuant to its Stipulation and Consent Order dated February 24, 2014 (the "Scheduling Order"), this Court has determined that the findings contained in this Court's prior decisions, as well as in numerous orders addressing the Trustee's various attempts to recover estate assets that were transferred postpetition by Debtor,[3] establish the prerequisites for denial of the Debtor's request for discharge and require this Court to grant the Motions and enter a judgment denying the Debtor's discharge. *See, e.g., Arizona v. California*, 460 U.S. 605, 618 (1983); *Cohen v. Bucci*, 905 F.2d 1111, 1112 (7th Cir. 1990); *In re Carey*, BAP No. 10-1017, 2010 WL 5600987, *8 (9th Cir. BAP Nov. 30, 2010); *In re Montagne*, Bky. No. 08-10916, 2010 WL 396252, *5-6 (Bankr. D. Vt. Jan. 25, 2010).

**I.    PROCEDURAL HISTORY**

For reasons that have been repeatedly elaborated by this Court, this Court first appointed a Chapter 11 Trustee and later converted the Debtor's case to a Chapter 7 because of various misconduct

---

[1] Motion for Summary Judgment dated January 20, 2014 [Adv. No. 13-481, Docket No. 12].

[2] Joint Motion for Summary Judgment dated February 28, 2014 [Adv. No. 13-438, Docket No. 15; Adv. No. 13-479, Docket No. 20].

[3] *In re Grasso*, 490 B.R. 500 (Bankr. E.D. Pa. 2013) ("*Grasso I*") (appointing Chapter 11 trustee); *In re Grasso*, 497 B.R. 448 (Bankr. E.D. Pa. 2013) ("*Grasso II*") (converting to Chapter 7), aff'd by *Grasso v. Madison Capital*, 2014 WL 1281123 (E.D. Pa. March 31, 2014) ("*Grasso III*"); *In re Grasso*, 506 B.R. 626, (Bankr. E.D. Pa. 2014) ("*Grasso IV*") (denying attorney compensation) vacated by 2014 WL 3389119 (E.D. Pa. July 11, 2014) ("*Grasso V*"); Order dated July 1, 2013 [Bky. No. 12-11063, Docket No. 693] (consent order addressing motion to compel production of records and turnover of property).

engaged in by the Debtor during the pendency of his bankruptcy.[4] Pursuant to Fed. R. Bankr. P. 4004(a), the deadline for objecting to discharge was September 13, 2013.[5] Prior to this deadline, four complaints were filed objecting to the entry of the Debtor's discharge: (1) a Complaint dated August 12, 2013 (the "Madison Complaint") filed by Madison Capital Company, LLC ("Madison"); (2) a Complaint dated September 12, 2013 (the "DeAngelis Complaint") filed by Roberta A. DeAngelis, United States Trustee (the "US Trustee"); (3) a Complaint dated September 12, 2013 (the "Shubert Complaint") filed by Christine C. Shubert, Chapter 7 Trustee (the "Chapter 7 Trustee") for the Estate of Joseph Grasso (the "Estate"); and (4) a Complaint dated September 13, 2013 filed by Marshall J. Katz ("Katz," collectively with Madison, the US Trustee and the Chapter 7 Trustee, the "Plaintiffs"). After the Debtor filed his answer to each of the Complaints and in recognition of the common factual and legal issues, the Plaintiffs and the Debtor requested this Court consolidate its consideration of the Plaintiffs' complaints. To that end, this Court entered the Scheduling Order consolidating the four adversary proceedings (the "§727 Proceedings") and setting forth deadlines for the filing of dispositive motions. The Scheduling Order consolidated this Court's consideration of four adversary proceedings that in the above-captioned adversary proceedings that collectively seek the entry of judgment denying the Debtor's request for discharge.

The Scheduling Order set February 28, 2014, as the deadline for the filing of any dispositive motions and provided that any dispositive motion filed in any of §727 proceedings shall be applicable to all of the §727 proceedings. In accordance with the Scheduling Order, Katz, Madison and the Chapter 7 Trustee filed the Motions. In addition, the Scheduling Order provided that the Debtor may file on or

---

[4] On April 4, 2013, this Court stated in support of its decision to appoint a Chapter 11 trustee that the Debtor's diversion of estate assets to purchase the Proof of Claim dated March 15, 2012 filed by Wilmington Savings Fund Society FSB ("WSFS") was "[o]f primary significance to this Court's decision…" *Grasso I*, 490 B.R. at 507. This Court reiterates significance of its prior finding that the Debtor diverted "no less than $779,344.92" of proceeds of the sale of real property to fund the purchase of the Proof of Claim dated March 15, 2012 filed by WSFS evidencing a secured claim against the Debtor in the amount of $929,259.69 (the "WSFS Claim"). *Grasso I*, 490 B.R. at 508-09.

[5] The first date set for the Chapter 7 meeting of creditors was July 16, 2013. Therefore, the deadline for initiating a §727 proceeding was September 16, 2013. Fed. R. Bankr. P. 4004(a) ("a complaint, or a motion under §727(a)(8) or (a)(9) of the Code, objecting to the debtor's discharge shall be filed no later than 60 days after the first date set for the meeting of creditors under §341(a).").

3

before April 29, 2014, one consolidated response to any and all dispositive motions.  Despite consenting to this deadline and being granted additional time to obtain replacement counsel, the Debtor did not file a response.

Consistent with the Scheduling Order, this Court held the Hearing at which the Debtor and the Plaintiffs each appeared.  At the commencement of the Hearing, Paul J. Winterhalter ("PJW"), appearing on behalf of the Debtor, requested a continuance of the Hearing to allow his client the opportunity to respond to the Motions.  The Plaintiffs objected to the Debtor's request.  In support of his request, PJW argued that in lieu of filing a response to the Motion on or before April 29th as required by the Scheduling Order, PJW filed a Motion to Suspend Adversary Proceedings dated April 28, 2014 [Bky. No. 12-11063, Docket No. 1127] (the "Motion to Suspend"), in which PJW requested a temporary suspension of all adversary proceedings pending the disposition of the Motion to Disqualify Counsel dated April 16, 2014 [Bky. No. 12-11063, Docket No. 1113] (the "Motion to Disqualify").  Pursuant to an Order dated May 23, 2014 [Bky. No. 12-11063, Docket No. 1194], this Court stayed until June 25, 2014, the adversary proceedings addressed by this memorandum to provide the Debtor an opportunity to obtain replacement counsel and otherwise responds to the Motions.  Despite affording the Debtor ample opportunity to obtain substitute counsel, no attorney has entered an appearance on behalf of the Debtor.  As a result this Court is now prepared to issue its decision on the Motions.

## II.    THE SUFFICIENCY OF THE MOTIONS

Fed. R. Civ. P. 56 is made applicable to adversary proceedings through Fed. R. Bankr. P. 7056.  Pursuant to Fed. R. Civ. P. 56 summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); s*ee also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999) (*quoting Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994); *Data Int'l. of N.C., L.L.C. v. STV, Inc.*, 159 F.Supp.2d 844 (E.D. Pa. 2001).  A moving party has the burden of demonstrating the absence of any genuine issue of material fact, and this Court must consider all inferences in the light most favorable

to the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When a non-moving party fails to answer, this Court must determine whether judgment for moving party is "appropriate." *Anchorage Assoc. v. Virgin Island Bd. Of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). Unlike in the context of an unanswered complaint that is deemed admitted by operation of Fed. R. Civ. P. 8(b)(6), the failure of a party to respond to a motion for summary judgment does not have any procedural effect. Because the Plaintiffs bear the burden of persuasion on all issues, the Debtor's failure to respond to the Motions is not determinative of this Court's consideration. This Court must still determine whether the facts identified and supported by the Motions entitle the Plaintiffs to judgment as a matter of law. *Anchorage Assoc.*, 922 F.2d at 175.

**The Motions**

The Motions seek summary judgment on the causes of action predicated on the following statutory provisions: (1) §727(a)(2)(A) [prepetition transfer of estate property]; (2) §727(a)(2)(B) [postpetition transfer of estate property]; (3) 727(a)(3) [concealment or destruction of material financial records]; and (4) §727(a)(4)(A) [false oath]. Although plead by the Katz Complaint and the Joint Complaint, the Motions do not address §727(a)(4)(B) [presentation of a false or inflated claim] or §727(a)(4)(D) [withholding of material financial records]. In their Motions and their arguments to this Court, the Plaintiffs argue, and this Court agrees, that application of issue preclusion entitles them to the relief requested. *See, e.g., Cohen v. Bucci*, 905 F.2d 1111, 1112-13 (7th Cir. 1990) (recognizing that prior factual determinations made during the course of a debtor's bankruptcy may be determinative of a debtor's entitlement to a discharge).

**Prior Relevant Factual Determinations**

The following factual determinations contained in this Court's Memorandum dated April 4, 2013[6] were made in connection with this Court's decision to appoint a Chapter 11 Trustee and are relevant to the Plaintiffs' §727 claims:

---

[6] *Grasso I*, 490 B.R. at 500.

1. "[T]he Debtor's conduct was part of an intentional scheme to obscure from this Court and his creditors the nature of his finances."[7]

2. "[T]he Debtor (1) had lied to this Court and his creditors about his purchase of the claim asserted by the Wilmington Savings Fund Society FSB ("WSFS"); (2) breached his fiduciary obligation as a debtor-in-possession by failing to disclose the opportunity to purchase the same claim; and (3) diverted assets that should have accrued to the estate as a result of the sale of property located at 124–134 S. 15th Street, Philadelphia, Pennsylvania."[8]

3. "[T]he Debtor caused the diversion of at least $500,000 of [the proceeds of the sale of the Sansom Property] by orchestrating the purchase of the WSFS Claim."[9]

4. "[D]istributions totaling $156,758.35 were either made for the Debtor's benefit to non-debtor entities, or issued to the Debtor and diverted by him to the operating accounts of non-debtor entities that he controls."[10]

5. "[T]he Debtor was unwilling to assist his creditors in completing the inquiry into the circumstances of the Claim Transfer."[11]

6. The Debtor purposely hid his diversion of estate assets.[12]

7. The Debtor failed to produce documentation corroborating his allegation that his partnership interests were held with his wife by tenants by the entirety.[13]

---

[7] *Grasso I*, 490 B.R. at 506.

[8] *Grasso I*, 490 B.R. at 506.

[9] *Grasso I*, 490 B.R. at 508.

[10] *Grasso I*, 490 B.R. at 508-09.

[11] *Grasso I*, 490 B.R. at 509.

[12] *Grasso I*, 490 B.R. at 510 (finding the Debtor involved the Sansom Partnership to "hide the true nature of the transaction."); *Grasso I*, 490 B.R. at 513 (finding the Debtor's purchase of the WSFS Claim "was exacerbated by his subsequent efforts to cover up the true nature of this transaction.").

[13] *Grasso I*, 490 B.R. at 514-18 ("By failing to provide documentation of his wife's interests, the Debtor frustrated his creditors' efforts to investigate the legitimacy of his wife's interests.").

    8.      The Debtor failed to file timely and accurate financial disclosures.[14]

    9.      The Debtor exhibited unrelenting dishonesty.[15]

The following factual determinations are contained in this Court's Memorandum dated July 11, 2013 and, after appeal, were affirmed by the District Court and were made in connection with this Court's decision to convert the Debtor's case to Chapter 7 and are relevant to the Plaintiffs' §727 claims and:[16]

    10.     The Debtor's postpetition expenses of at least $282,870 were "effected outside the purview of this Court by the Debtor through the network of nondebtor entities he owns and controls. To hide these expenditures from this Court, the Debtor diverted distributions that should have been received by his estate."[17]

    11.     "[T]he sale of three antique automobiles without Court approval and without distributing the proceeds of the sales to his estate: (1) a 2006 Lincoln 8 passenger limousine sold on March 13, 2012; (2) a 1969 Corvette Convertible sold on April 20, 2012; and (3) a 1959 Chevrolet El Camino sold on April 25, 2012 (collectively, the "Antique Automobiles").[18]

    12.     The Debtor permitted the diversion of the three payments in the total amount of $341,500.00 from Curtis Investors, LP.[19]

---

[14] *Grasso I*, 490 B.R. at 519-523 (discussing "the Debtor's failure to file timely and accurate financial disclosures").

[15] In this Court's order appointing the Chapter 11 Trustee, this Court determined that the Debtor "lied" to this Court. *Grasso I*, 490 B.R at 506 ("Among those findings were this Court's determination that the Debtor (1) had lied to this Court and his creditors about his purchase of the claim asserted by the Wilmington Savings Fund Society FSB ("WSFS"); (2) breached his fiduciary obligation as a debtor-in-possession by failing to disclose the opportunity to purchase the same claim; and (3) diverted assets that should have accrued to estate as a result of the sale of property located at 124–134 S. 15th Street, Philadelphia, Pennsylvania.").

[16] *Grasso II*, 497 B.R. at 448.

[17] *Grasso II*, 497 B.R. at 456.

[18] *Grasso II*, 497 B.R. at 452. As affirmed by the District Court, "[t]he sale of antique automobiles was a transaction that, like the postpetition expenses, *Grasso failed to disclose to the Court*." *In re Grasso*, Civ. No. 13-4308, 2014 WL 1281123, *2 (E.D. Pa. Mar. 31, 2014).

[19] "In July 2012, the Debtor received a payment of $153,100. In August 2012, the Debtor received a payment of $130,900. In September 2012, the Debtor received a third and final payment of $57,500." *Grasso II*, 497 B.R. at 452. As affirmed by the District Court, "The three payments from Curtis amounted to $341,500 that should have accrued to the estate but that Grasso appropriated to himself (and *concealed from the Court*)." *In re Grasso*, Civ. No. 13-4308, 2014 WL 1281123, *7 (E.D. Pa. Mar. 31, 2014).

13. The Debtor caused the expenditure of $25,506 of estate assets at "Restaurants."[20]

14. The Debtor caused the diversion of $68,300 of estate assets to "purchase at least three automobiles: (1) on February 8, 2012, a pickup truck was purchased for the benefit of a nondebtor entity with funds that were diverted from the Debtor's estate; (2) on July 9, 2012, a Hummer was purchased for the benefit of the Debtor with funds that were diverted from the Debtor's estate; and (3) on August 8, 2012, a Ford L9000 truck was purchased for the benefit of a nondebtor entity with funds that were diverted from the Debtor's estate."[21]

15. The diversion of $20,000 of estate assets to fund a gift to the Debtor's son.[22]

16. The failure to provide information reasonably requested by the Chapter 7 Trustee.[23]

**Causes of Action Under §727(a)(2)(A) & (B)**

To meet their burden under §727(a)(2)(A), the Plaintiffs must establish of evidence (1) debtor transferred, removed or concealed property; (2) property belonged to the debtor; (3) conduct occurred within one year of the petition date; and (4) conduct was intended to hinder, delay or defraud a creditor. *In re Von Kiel*, App. No. 13-1925, 2013 WL 6768147 (3d Cir. Dec. 24, 2013); *In re Rose*, 397 B.R. 740, 742 (Bankr. M.D. Pa. 2008). The cause of action under §727(a)(2)(B) is identical save for rather than requiring proof of a prepetition conduct, §727(a)(2)(B) addresses postpetition conduct. The Debtor's fraudulent intent may be determined by reference to the usual "badges of fraud." *In re DiLoreto*, 266 Fed. Appx. 140, 144 (3d Cir. 2008); *In re Rose*, 397 B.R. 740, 742-43 (Bankr. M.D. Pa. 2008).

---

[20] *Grasso II*, 497 B.R. at 456.

[21] *Grasso II*, 497 B.R. at 452.

[22] *Id*.

[23] "The Chapter 11 Trustee stated that she lacked sufficient information to conduct a liquidation analysis because, among other reasons, she had not been provided with the information she needs to complete her fraudulent transfer analysis." *Grasso II*, 497 B.R. at 454. Elsewhere, this Court observed "As admitted by the Chapter 11 Trustee, her inability to evaluate the feasibility of any proposed plan was the result of the Debtor's continued failure to abide by his disclosure obligations." *Grasso II*, 497 B.R. at 462. As stated by the District Court, "Grasso has not appealed the Bankruptcy Court's finding that Grasso's actions amounted to gross mismanagement of the estate, harmful and unauthorized use of cash collateral, unexcused failure to satisfy the Code's reporting requirements, and *failure timely to provide information reasonably requested by the U.S. Trustee*." *In re Grasso*, Civ. No. 13-4308, 2014 WL 1281123, *2 (E.D. Pa. Mar. 31, 2014) (emphasis added).

**Plaintiff's Evidence**

In support of this count, the Plaintiffs recite a litany of actions taken by the Debtor. Primary among the Plaintiffs' allegations are (1) the Debtor's role in the Sansom/WSFS transaction and (2) the Debtor's diversion of distributions from Curtis Investors LP. In addition, the Plaintiffs cite to the Debtor's involvement in a series of other unauthorized, postpetition transfers involving, *inter alia*, the sale of certain antique automobiles and the purchase of at least three other automobiles.[24] This Court has written extensively with regard to each of these transfers as well as other examples of the Debtor's misconduct. From this Court's review of its prior decisions that address both episodes and have since been confirmed upon appeal,[25] this Court agrees that application of the law of the case doctrine and/or issue preclusion requires this Court to grant the Motions with regard to the Plaintiffs' §727(a)(2)(B) claims. Each of the elements of the Plaintiffs' §727(a)(2)(B) claim have been expressly decided in the course of this Court's adjudication of prior matters. All of the transfers identified in the Motions have been determined to have been made by the Debtor during the pendency of his bankruptcy and were determined to have involved estate assets. Even the issue of the Debtor's fraudulent intent is affirmatively established. For example, this Court's prior factual determinations regarding the Debtor's efforts to conceal and to cover up his involvement in the Sansom/WSFS transaction[26] are sufficient to establish that the Debtor transferred estate property with the intent to hinder, delay or defraud a creditor. *See, e.g., Merrill Lynch Business Financial Services, Inc. v. Kupperman*, 441 Fed. Appx. 938, 941 (3d Cir. 2011) (recognizing that concealment and "cover up" of transfers "generally provides conclusive evidence of an actual intent to defraud.").

### III. CONCLUSION

For the reasons stated, the Motions will be granted because application of the law of the case doctrine and issue preclusion is sufficient to establish that a denial of discharge is warranted under

---

[24] *Grasso II*, 497 B.R. at 452.

[25] *Grasso v. Madison Capital Co.*, Civ. No. 13-4308, 2014 WL 1281123 (E.D. Pa. Mar. 31, 2014).

[26] *Grasso I*, 490 B.R. at 513 (finding the Debtor's purchase of the WSFS Claim "was exacerbated by his subsequent efforts to cover up the true nature of this transaction.").

§727(a)(2)(B). In the interests of judicial economy, this Court will forego its consideration of the Plaintiffs' remaining §727 claims.

An Order consistent with this Memorandum will be entered.

Dated:  September 15, 2015

_____
MAGDELINE D. COLEMAN
UNITED STATES BANKRUPTCY JUDGE